415 So.2d 190 (1982)
STATE of Louisiana
v.
Roy A. VANDERHOFF, Sr.
No. 80-KA-2529.
Supreme Court of Louisiana.
May 17, 1982.
Rehearing Denied July 2, 1982.
*191 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Jack Rowley, Dist. Atty., Glenn E. Diaz, Abbott J. Reeves, Asst. Dist. Attys., for plaintiff-appellee.
Walker H. Drake, Jr., Chalmette, Indigent Defender Office, for defendant-appellant.
DIXON, Chief Justice.
Defendant was arrested on July 8, 1977 for aggravated crime against nature in violation of R.S. 14:89.1. A bill of information was filed on May 8, 1978 charging defendant with aggravated crime against nature on a nine year old girl. Defendant was arraigned on June 5, 1978 at which time he entered pleas of not guilty and not guilty by reason of insanity. On August 7, 1978 defendant was found insane based on opinions of two psychologists, and was committed *192 to the East Louisiana State Hospital at Jackson, Louisiana. Defendant was later reevaluated by the same psychologists and the Louisiana Department of Health and Human Resources; it was determined that defendant was sane. On October 15, 1979 defendant withdrew his former plea of not guilty and not guilty by reason of insanity and entered a plea of not guilty. On February 12 and 13, 1980 defendant was tried by a twelve person jury that unanimously found him guilty as charged. Defendant was sentenced to ten years at hard labor on June 9, 1980.
FACTS
On July 8, 1977 somewhere between 2:00 p. m. and 4:00 p. m., the nine year old victim returned home to tell her mother that something had happened to her. She related to her mother that she had been around the block at Roy Vanderhoff's house. Roy Vanderhoff, thirty-one years old at the time, had called her inside and wanted her to play house with him. If she should refuse to play with him, Vanderhoff told her, he would call the police to make her daddy pay for a car that she had damaged by jumping on the hood.
Vanderhoff led the nine year old victim into his bedroom, lit a cigarette and took off his pants. She told her mother he was wearing pants without a shirt or underwear. He lay naked on the waterbed and told her to crawl under the covers. She lay across the top of him and he put his penis in her mouth and moved her around until he ejaculated into her mouth. The victim told her mother the penis was warm and felt like a nipple. She said it had a hole in it, and white slime came out.
The victim's mother called the St. Bernard sheriff's office shortly after her daughter told her what happened. When the officers arrived, the victim related the incident to them. Detective Carreras, Detective Papania and Captain Charrier went to defendant's home. Two officers knocked on the front door, and one went to the rear. The officers testified they knocked on the front door, and heard some movement inside. The officer at the rear of the house stated defendant ran out the rear door, wearing pants without a shirt. He jumped over the back steps, and did not stop until a gun was pulled on him. Defendant was arrested and taken to the sheriff's office. An officer instructed defendant to remove his pants, and this revealed defendant was wearing no underwear.
Defendant alleged that the nine year old victim was not at his home on July 8, 1977. He and his two sons, ages twelve and thirteen at the time of trial, testified the nine year old girl had been at their home on July 6, 1977. She and defendant's youngest son had been in the house jumping on defendant's waterbed, and broke a light bulb on the bed. Defendant hollered at the girl and told her to go home. Defendant went back to work on a car in his yard, where he had been when he heard the children in the house. The victim and defendant's youngest son began jumping on the hood of the car on which defendant was working. Defendant became angry, and he sent the victim home once again. Defendant alleges she was angry with him for yelling at her, and made up this story about him for revenge.
Defendant's youngest son, Johnny, told the officers that his father had called the victim in the house on July 8, 1977. He said she was in the house for about half an hour, and she left the house crying. Johnny and his brother, Roy, were taken to the sheriff's office after their father was arrested. Detective Carreras testified as to Johnny's statement on July 8, 1977, but Johnny denied making the statement. Johnny did say it was possible he might have told Detective Carreras that he had seen the victim on that day.
Defendant, his brother-in-law, Vernon Marcal, and defendant's two sons testified that defendant was at his home on July 8, 1977. Defendant was working with his brother-in-law on a truck from about 8:30 a. m. until half past noon. Defendant's sons testified they were in the house waiting for their father to fix lunch when the officers arrived to arrest him. Defendant and his sons stated he had gone out the rear door *193 when he saw the officers. He was in the kitchen, near that door, and wanted to meet the officers to find out what was wrong. Defendant also attempted to show that the victim and her mother had on previous occasions made false accusations of sexual abuse against another neighbor, Mr. Ayo.
Assignments of Error Nos. 4, 5, 9, 16 and 21
Defendant alleges prejudicial error in the state's answer to question 6 of his bill of particulars and in answer to his prayer for oyer. He also contends the trial court erred in allowing the victim's mother to testify as to the age of the defendant, and in allowing the police officers to testify as to defendant's verbal admission of his age. However, the record reveals that the defense failed to object at the hearing on discovery motions. The defendant only objected to answers 1 and 4 that were given in response to the bill of particulars, and he was satisfied with the state's answer to his prayer for oyer. At trial the defense failed to object to the mother's or the police officer's testimony relating to the age of defendant. Failure of the defense to make a contemporaneous objection at the time of error is considered a waiver of that error for appeal. See State v. Baylis, 388 So.2d 713 (La.1980); State v. Lawson, 393 So.2d 1260 (La.1981).
These assignments lack merit.
Assignments of Error Nos. 6 and 27
By these assignments defendant contends the trial court erred in preventing him from questioning the victim or Mary Schneider, a neighbor of the defendant and the victim, about whether or not Mr. Ayo, another neighbor, had ever done anything to the victim. The trial judge sustained the state's objection to those questions. The defense was attempting to show that the victim's mother had accused Mr. Ayo of making sexual advances toward the victim when she was five years old. Mary Schneider did testify that the victim's mother had said Mr. Ayo had made improper advances toward her daughter. When asked whether she believed it, the state objected. It appears the trial judge did not let the defense question the victim about Mr. Ayo because he did not think she should be placed on trial. However, he did allow the question to be asked of Mary Schneider; he did not allow her opinion as to whether the story was true.
These assignments are without merit. Mr. and Mrs. Ayo both testified at trial, and the defense had the opportunity to examine them regarding the truth of the allegation, as well as the victim's mother's reasons for making it. Mrs. Ayo testified that the victim's mother told her that Mr. Ayo had taken the victim's pants down in the yard. Mrs. Ayo stated she confronted her husband with the story, and he denied it. Mr. Ayo testified that the victim's mother never told him, but told his wife, that he had taken the victim's pants down. He testified that the victim had come into his yard and flipped up her shirt, which was unbuttoned. He told her to get out of the yard.
Defendant contends that he should have been allowed to ask the nine year old victim about Mr. Ayo in order to impeach her testimony. It is important to note that the victim was twelve years old at the time of trial; the trial judge, the prosecutor and defense counsel were solicitous of the child, who was upset and rather inarticulate. It took some time before she would answer questions, and most of her testimony consists of yes or no answers to counsels' questions. Defense counsel tried to explain the purpose of his questions (impeachment of the state's witnesses), and now argues that the trial court's denial of his right to ask those questions constituted a violation of defendant's Sixth Amendment right to confront witnesses and cross-examine them. This argument is not without some merit, but defendant fails to show any prejudice from the lack of the child's testimony about the Ayo incident. The child was five years old when it happened. Defense counsel was allowed to question the child's mother in detail about the incident, as well as Mr. and Mrs. Ayo and another neighbor. The jury heard the full story.
Assignment of Error No. 7
Defendant asserts that the court's refusal to restrain the district attorney's use of *194 leading questions to the nine year old victim constituted prejudicial error. He contends the leading questions were like testimony by the district attorney. This court has held that:
"... Although counsel should not be permitted to mold the witness' testimony, a verdict should not be reversed in the absence of a clear abuse calculated to prejudice the accused's rights. State v. Sheppard, 350 So.2d 615 (La.1977); State v. Washington, 294 So.2d 794 (La.1974)." State v. Swift, 363 So.2d 499, 505 (La. 1978).
From the record it appears the district attorney did lead the witness and probably would have gotten little testimony from her without leading questions. The witness in this case was only twelve years old, and it was difficult enough to persuade her to answer. Some leading questions were either rephrased by the district attorney so that they were no longer leading, and some were made in reference to earlier testimony by the victim. The practice can be abused, but in the absence of abuse we should not reverse when the trial court allows leading questions to a witness who, because of youth, confusion or otherwise cannot understand direct questions. The trial court can protect the defendant with adequate jury instructions from the risk involved in leading questions when the choice is between the risk, on one hand, and abandoning the effort to find out what the witness knows. See State v. Boyd, 359 So.2d 931 (La.1978); State v. Francis, 337 So.2d 487 (La.1976).
Assignments of Error Nos. 1, 2, 3, 8, 12, 14, 15, 17, 18, 19, 20 and 23
Assignments of Error Nos. 8, 12, 14, 15, 17, 18, 19, 20 and 23 were not objected to at trial and are considered waived. State v. Lawson, supra; State v. Baylis, supra. Assignments of Error Nos. 1, 2 and 3 were objected to at trial, but were neither briefed nor argued and are considered abandoned. See State v. Gardette, 352 So.2d 212 (La.1977); State v. Fields, 342 So.2d 624 (La.1977).
Assignment of Error No. 11
By this assignment defendant contends that the trial court erred in overruling the defense's objection to a question asked by the state to the victim's mother.
The question of which this assignment complains was: "Is [the victim] capable of coming up with a story like that on her own?" Defendant argues the question called for an opinion and should not have been admitted according to R.S. 15:463, which provides:
"Except as otherwise provided in this Code, the witness can testify only as to facts within his knowledge, and neither as to any recital of facts heard by him, nor as to any impression or opinion that he may have."
While it is true that a lay witness, generally, can testify only as to facts, a witness is permitted to draw reasonable inferences from personal observation. State v. Sayles, 395 So.2d 695 (La.1981). In the instant case, the state questioned the victim's mother with regard to the victim's behavior when the victim reported the crime to her and with regard to what the victim told her. At the end of this line of questioning the state asked: "Is [the victim] capable of coming up with a story like that on her own?"
Although the defendant objected to the question at trial, he failed to state a basis for his objection as required by C.Cr.P. 841. Fulfillment of this requirement allows the trial court the opportunity to rule on the objection and to avoid or cure any error. State v. Baylis, supra. No prejudicial effect by this testimony has been shown.
The error does not justify reversal.
Assignment of Error No. 13
By this assignment defendant contends that the trial court erred in allowing the state to use less than the best evidence.
Defendant objected to the state's questioning of Detective Papania with regard to what the victim told him during his investigation of the reported crime. The testimony *195 was hearsay, but there was no objection on that ground. There was no violation of the "best evidence" rule of R.S. 15:436.
Nor was there any need for this hearsay testimony. Although inadmissible, it was merely cumulative; the record contains much similar testimony admitted without objection. The error, therefore, was harmless.
Assignments of Error Nos. 24 and 25
Defense counsel asserts that he was restrained from asking questions of Detective Carreras on cross-examination relative to the failure of the police to conduct scientific tests on the victim and on the defendant's clothing. The record indicates defense counsel was given ample opportunity to examine Carreras on this matter. He took full advantage of that opportunity, and there is no merit in these assignments.
Assignment of Error No. 29
Defense counsel attempted to ascertain from Detective Carreras on cross-examination if the term "a little while ago" referred to the date of July 8, 1977. Johnny Vanderhoff, defendant's youngest son, spoke with Detective Carreras at the sheriff's office after his father's arrest. The officer asked whether Johnny's father had called the nine year old victim into the house "a little while ago."
The officer testified that Johnny told him "yes." Defense counsel unsuccessfully tried to use the term "a little while ago" to mean a few days before July 8, 1977. Tex Duvall, Johnny's grandfather, was present when the question was asked of Johnny, and he testified that Johnny said the victim had been in the house awhile ago. There was some confusion as to what the term meant, and Johnny denied making the statement. Johnny did admit it was possible he could have made the statement.
The testimony of Carreras and Duvall did not establish what was in Johnny's mind when he answered the question, and it is possible that "a little while ago" meant different things to Johnny and the officer. However, defense counsel had ample opportunity to question the officer, Duvall and Johnny Vanderhoff about the statement.
This assignment is without merit.
Assignment of Error No. 30
Defendant contends the trial court erred in denying his motion in arrest of judgment. Defendant asserts that the bill of information filed against him was defective because it did not allege that he was above the age of seventeen years and that the victim was below the age of seventeen. Defendant argues this omission is a substantial defect in the bill of information, and therefore grounds for arrest of judgment under C.Cr.P. 859.
Defects in the bill of information, caused by failure to list essential elements of the crime, are cured by the answers in response to the bill of particulars. See State v. LeJeune, 352 So.2d 619 (La.1977); State v. James, 305 So.2d 514 (La.1974).
Here, the state furnished defendant with answers to his bill of particulars on February 6, 1980. The information advised defendant he was charged with aggravated crime against nature on the victim in violation of R.S. 14:89.1. The crime was alleged to have occurred on July 8, 1977. Answers to the bill of particulars provided the following information: the crime occurred between 6:00 a. m. and 1:05 p. m. at 701 Josephine Street in Chalmette, Louisiana. Defendant was charged with violating R.S. 14:89.1(4) and (5).
At trial, the defense stipulated that Roy Vanderhoff was over seventeen years of age and at least three years older than the victim. The failure to allege the ages of defendant and the victim obviously did not prejudice defendant.
Defendant was informed of the nature of the crime with which he was charged. See State v. Gainey, 376 So.2d 1240 (La.1979).
The assignment lacks merit.
Assignment of Error No. 31
Defendant argues the trial court erred in denying his motion for a new trial on the basis of newly discovered evidence. Defendant and the state stipulated that *196 subsequent to trial and sentencing, the victim had made allegations against another individual, accusing that person of acts similar to those committed by defendant. Defendant contends this information could have changed the jury's verdict.
We are given no other facts to flesh out this stipulation, except that the sheriff investigated the complaint and no arrest was made. Defendant argues that this evidence substantiates his allegation that the victim made up this story about him. If the stipulation were that the child fabricated this new complaint, the defendant would be correct. But we are not told why no arrest was made, and can find no error of law in the ruling of the trial judge.
Assignment of Error No. 32
Defendant argues the trial court did not follow the sentencing guidelines of C.Cr.P. 894.1 in determining his sentence. He also argues that his sentence of ten years at hard labor is excessive.
The trial court carefully considered the criteria of C.Cr.P. 894.1 when it determined defendant's sentence. The judge stated that he believed the testimony of the child and her mother regarding defendant's actions in calling the victim into his house; the graphic description of the incident by the child, who is a slow learner, according to the court, corroborates the judge's conclusion. The court noted that the presentence investigation report recommended that defendant not be placed on probation. The trial judge based defendant's sentence on these facts in conjunction with the factors listed in C.Cr.P. 894.1. A sentence of ten years at hard labor was considered proper because of the nature of the offense and the circumstances surrounding it, as well as the fact that a lesser sentence would deprecate the seriousness of the crime.
R.S. 14:89.1 provided for penalties of not less than three nor more than fifteen years at hard labor.[1] Defendant's sentence of ten years at hard labor is well within the statutory range. The ten year sentence is not grossly disproportionate to the crime herein, and is not excessive under State v. Hogan, 403 So.2d 1210 (La.1981).
This assignment lacks merit.
For these reasons, defendant's conviction and sentence are affirmed.
LEMMON, J., concurs.
NOTES
[1] R.S. 14:89.1 was amended by Acts 1979, No. 125, Sec. 1, after the commission of the offense by defendant. The statute now provides for penalties of not less than three nor more than fifteen years at hard labor without benefit of suspension of sentence, probation or parole.