473 So.2d 886 (1985)
STATE of Louisiana, Plaintiff-Appellee,
v.
Richard REYNOLDS, Defendant-Appellant.
No. CR 84-981.
Court of Appeal of Louisiana, Third Circuit.
August 2, 1985.
*888 Michael W. Shannon, Alexandria, for defendant-appellant.
Edward E. Roberts, Jr., Asst. Dist. Atty., Alexandria, for plaintiff-appellee.
*889 Before DOMENGEAUX, DOUCET and KNOLL, JJ.
DOUCET, Judge.
This appeal arises from the defendant's conviction for aggravated burglary and for the aggravated rape of an Alexandria woman.
On August 25, 1983, the victim, a divorced woman living with her small child, was awakened from her sleep in her apartment in Alexandria, Louisiana, by a naked man who jabbed her in the chest with a screwdriver, threatened to kill her, robbed and raped her. The victim estimated that the rapist remained in her apartment for approximately two to three hours. During that time the assailant told her that his astrological sign was "Virgo" and that he had received a wound to his right shoulder during his military service in Vietnam. He also indirectly indicated to the victim that his first name was Richard by relating a personal anecdote in which a friend called him Richard.
The defendant was arrested on November 10, 1983 by Terry Kitchen, an investigator employed by the Alexandria City Police Department. During a lineup held the next day, the victim, without hesitation, identified the defendant as the rapist. Prior to trial, the defendant moved to suppress the pre-indictment lineup identification. The motion was denied by the trial judge. At the trial, the victim identified the defendant as her attacker. Officer Kitchen testified that his investigation had revealed that the defendant's date of birth was September, which would put him under the astrological sign of Virgo, as he had indicated to the victim. The defendant was caused to remove his shirt revealing a scar from a wound of undetermined origin on his right shoulder. Bruce Shelton, the defendant's brother-in-law, testified as to inculpatory statements made to him by the defendant. A defense witness, Walter Lowe, testified that the defendant spent the entire night of the crime at his house.
A twelve-member jury found the defendant guilty as charged. The defendant requested that the jury be polled and as to each count, the verdict was eleven "yeses" and one "no".
The defendant was sentenced to serve the remainder of his natural life at hard labor and without the benefit of parole in the custody of the Louisiana Department of Corrections on the aggravated rape charge, and on the aggravated burglary charge, to serve fifteen years at hard labor in the custody of the Louisiana Department of Corrections, with the sentences to run concurrently. Defendant appeals his conviction. Several of his numerous assignments of error were not briefed and will therefore, not be considered. State v. Dewey, 408 So.2d 1255 (La.1982); State v. Crawford, 441 So.2d 813 (La.App. 3rd Cir. 1983). We will deal with the remaining arguments according to their subject matter.

IDENTIFICATION PROCEDURE:
The defendant contends that the trial court erred in denying his motion to suppress the identification procedure. He argues that his due process rights were violated by the suggestiveness of the identification and by the absence of counsel at the lineup.
The crimes occurred on August 25, 1983. The defendant was arrested on November 10, 1983. The lineup was held on November 11, 1983. The defendant was indicted on January 26, 1984.
In State v. Bickham, 404 So.2d 929 (La. 1981), the Louisiana Supreme Court found that:
"Absent special circumstances the presence of counsel is not required at pre-indictment lineups. Kirby v. Illinois, 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972). Since due process safeguards usually provide adequate protection for a defendant before a formal charge, the right to counsel was explicitly limited in Kirby to a "criminal prosecution", which commences only with the initiation of adversay judicial proceedings by formal charge, preliminary hearing, indictment information *890 or arraignment." [Emphasis supplied]
The defendant argues that special circumstances exist under the facts of this case which mandate the presence of counsel at the pre-indictment lineup. He asserts that the length of time which transpired between the crime and the subsequent lineup for identification changed the nature of the investigation to accusatory thereby bringing on the necessity for presence of counsel.
Before formal charge, indictment or arraignment, a defendant is generally entitled to counsel at an identification proceeding only in cases like Daigre v. Maggio, 705 F.2d 786 (5th Cir.1983), where a probable cause determination is made at a preliminary hearing prior to the identification procedure. In the case currently before us, the lineup took place before formal charge, indictment, information or arraignment. No probable cause determination had been made at that time. Therefore, the defendant was not entitled to the presence of counsel at the lineup.
The defendant further argues that his request for counsel was wrongfully denied. However, Officer Kitchen, who conducted the lineup, testified that no such request was made. The determination of credibility of witnesses is a function of the trier of fact. State v. Bell, 315 So.2d 31 (La.1975); State v. Shepherd, 332 So.2d 228 (La.1976). At the motion to suppress the identification, the trial judge apparently believed Officer Kitchen. We will not disturb his credibility evaluation.

INCULPATORY STATEMENTS
The defendant alleges that the State violated the provisions of La.C.Cr.P. art. 767 when it stated in opening argument that the victim was told by her assailant at the time of the crime that if she did not shut up he would kill her.
La.C.Cr.P. art. 767 states that:
"The state shall not, in the opening statement, advert in any way to a confession or inculpatory statement made by the defendant."
The Louisiana Supreme Court has defined the term "inculpatory statement" as an out-of-court admission of incriminating facts made by the defendant after the crime has been committed. State v. Labostrie, 358 So.2d 1243 (La.1978). The State referred in its opening statement to remarks to the victim made during the commission of the crime. This was not an inculpatory statement under the provisions of La.C.Cr.P. art. 767. Therefore, the trial judge was correct in denying the motion for mistrial.
The defendant further submits that the trial court erred in overruling his objection to the introduction into evidence of an inculpatory statement made to Bruce Shelton because the State did not comply with the provisions of La.C.Cr.P. art. 768. La.C. Cr.P. art. 768 provides that:
"Unless the defendant has been granted pretrial discovery, if the state intends to introduce a confession or inculpatory statement in evidence, it shall so advise the defendant in writing prior to beginning the state's opening statement. If it fails to do so a confession or inculpatory statement shall not be admissible in evidence."
On appeal, the defendant alleges that defense counsel did not receive notice of the State's intention to introduce the statement made to Shelton until after the State's opening statement. At trial, however, the defense counsel objected to the introduction of the statements based on the fact that he was not notified prior to the "selection of witnesses and the seating of the jury" which events, of course, occurred prior to the State's opening statement. He made no allegation that he had not been notified before the State's opening statement. Nothing in the record reflects anything beyond the fact that the notice was filed on May 22, 1984. The defendant is limited on appeal to the specific grounds for objection articulated at trial. He may not raise a new basis for an objection at the *891 appellate level. State v. Jackson, 450 So.2d 621 (La.1984).
There is no authority which would require the State to notify the defense of its intention to introduce evidence of an inculpatory statement prior to the selection of witnesses or the seating of the jury.

FINGERPRINT EVIDENCE
The defendant maintains that the State attempted to defeat the use and effectiveness of exculpatory evidence afforded to the defendant by pre-trial discovery. That evidence consists of scientific fingerprint evidence which failed to match latent fingerprints taken from the crime scene with those of the defendant. Prior to the introduction of evidence in this case, the State informed the trial court of its intention to perform additional scientific tests in order to compare the latent fingerprints lifted from the crime scene to those of the victim. Although the State never actually performed any additional fingerprint tests, the defendant objected twice to the State's questioning of investigating law enforcement officers as to whether the victim was ever fingerprinted and whether anyone else's fingerprints had been taken for comparison with those lifted from the crime scene. The trial judge overruled those objections.
The defendant urges that the nondisclosure by the State of its intention to destroy or mitigate the effect of previously provided exculpatory evidence before jury selection amounted to a violation of the disclosure requirements of La.C.Cr.P. art. 719 and created surprise evidence which prejudiced his case.
La.C.Cr.P. art. 719 provides as follows:
"Upon motion of the defendant, the court shall order the district attorney to permit or authorize the defendant to inspect and copy, photograph, or otherwise reproduce any results or reports, or copies thereof, of physical or mental examination, and of scientific tests or experiments, made in connection with or material to the particular case, that are in the possession, custody, control, or knowledge of the district attorney and intended for use at trial. Exculpatory evidence shall be produced under this article even though it is not intended for use at trial."
The state has a continuing duty under La.C.Cr.P. art. 729.3 to disclose such evidence when it comes within the State's control. The Louisiana Supreme Court has held that the purpose of the discovery rules as set forth in the Code of Criminal Procedure is to eliminate unwarranted prejudice which could arise from surprise testimony. State v. Mitchell, 412 So.2d 1042 (La. 1982). That court has also held that where the defendant has been lulled into a misapprehension of the strength of the State's case by the failure to fully disclose, such a prejudice may constitute reversible error. State v. Ray, 423 So.2d 1116 (La.1982). Had the State run those tests and attempted to introduce them into evidence, that might well have constituted error. However, that situation is not before us.
The State did question investigating law enforcement officers about comparisons that may have been made with the latent fingerprints lifted from the crime scene. Mr. Richard Smith, crime scene investigator, and Detective James Gaspard, both employed by the Alexandria City Police Department, were asked the following questions by the State during the defendant's trial:
"Q. Did you or anyone, to your knowledge, take [the victim's] fingerprints during the investigation of this case?
A. No, sir.
Q. Did you have anything to do with taking anyone else's fingerprints for comparison with these lifts?
A. You mean me fingerprinting someone else to compare that with?
Q. Yes, sir.
A. No."
The defendant cites no law that would indicate that the defense may not attempt to defeat the effectiveness of exculpatory evidence by suggesting that the fingerprints found were those of the victim. We see no impropriety in this line of questioning.
*892 The defendant further contends that an unidentified response of "yeah" to a question objected to by the defendant and sustained by the trial court prejudiced the defendant's right to a fair trial.
At trial, the State called as a witness Richard Beighley, an employee of Northwest Crimelab in Shreveport, Louisiana, in order to elicit testimony concerning fingerprint evidence gathered at the crime scene. During the re-direct examination of Mr. Beighley, the State asked the following question, to which the defendant objected:
"Q. Mr. Beighley, is it possible for, in your experience as a print lifter, for someone to handle something and not be able to get an identifiable ...
At this point in the proceedings, a response of "Yeah" was recorded by the Lanier Court machine. However, this response was not made by the witness, Richard Beighley.
BY_________: Yeah.
Q..... print off of it after they've handled it?
BY MR. SHANNON: I'd object. He has not been tendered as an expert ... asking as to possibilities."
The trial court ultimately sustained the defendant's objection. The defendant maintains that the unidentified affirmative response created substantial prejudice and deprived him of a fair trial.
The record reflects that an affirmative response was picked up by the court recording machine. However, the response was not made by the witness and remains unidentified. The defendant alleges that since the response was picked up by the recorder, it must have been made by the trial judge or an officer of the court. The defendant however, fails to identify the source of the response, and fails to allege any specific prejudice. Absent any showing of how this response caused the defendant substantial prejudice the allegations are unfounded.

HEARSAY EVIDENCE
Defendant urges that the trial court committed error by allowing hearsay testimony by the victim as to statements made by the defendant during the commission of the rape. The State, in attempting to discover the identity of the victim's attacker, asked the following questions at trial.
"Q. Did you ask what his name was?
A. No. He was ... began talking and had talked about his days in the military and told me that he was ... I didn't get all of what he said ... but he had said that he had talked with a friend, military person that he had roomed with, and had talked something about prejudice where they would talk ... the subject was prejudice. And he said that this white man had told him that many years ago that `Richard, you're prejudiced'.
BY MR. SHANNON: Your Honor, I'd object to the hearsay.
A. And that's how I knew his name or felt his name was Richard."
In State v. Sharp, 414 So.2d 752 (La.1982), the Louisiana Supreme Court noted that "... If a statement constitutes hearsay, but forms part of the res gestae, it is admissible into evidence...." That Court further pointed out in State v. Billiot, 421 So.2d 864 (La.1982), that "... The doctrine of res gestae includes not only spontaneous utterances and declarations made before and after commission of the crime, but also testimony of witnesses and police officers pertaining to what they heard or observed before, during or after the commission of the crime if the continuous chain of events is evident under the circumstances....". The statements made by the defendant to the victim during the commission of the offense presently before the court, constitute res gestae. La.R.S. 15:447, 448.
In addition, the defendant urges that the trial court committed error by allowing the State to prove the birthdate of the defendant through the testimony of Detective Terry Kitchen. During the trial, the victim testified that the defendant told her that his astrological sign was "Virgo". The State, in attempting to prove the defendant's *893 birthdate, asked Detective Kitchen the following questions:
"Q. During your investigation, did you find out the birthdate of Richard Reynolds?
A. Yes, I did.
Q. And what is that birthdate?
BY MR. SHANNON: Objection, Your Honor. It's hearsay.
BY THE COURT: Overruled.
Q. What is that birthdate?
A. September 5, 1946.
Q. Did you make any determination as to what astrological sign September 5, 194... September 5th would be?
BY MR. SHANNON: Objection. That calls for a hearsay response also, Your Honor.
BY THE COURT: Overruled.
A. Yes, I did.
Q. And what astrological sign did that fall under?
Q. Virgo."
The State failed to inquire as to the origin of Detective Kitchen's knowledge concerning the defendant's date of birth. Detective Kitchen's response to these questions falls under the definition of hearsay. In State v. Guin, 444 So.2d 625 (La.App. 3rd Cir.1983), this court noted that:
"Generally, hearsay is defined as an out-of-court statement introduced to prove the truth of its content. State v. Chaney and State v. Herman, 423 So.2d 1092 (La.1982); State v. Spell, 399 So.2d 551 (La.1981). LSA-R.S. 15:434 states the general rule that hearsay evidence is inadmissible. However, it is recognized that when inadmissible hearsay is improperly introduced at trial, which is merely cumulative of other properly introduced testimony, it is harmless error. State v. Parker, 425 So.2d 683 (La.1982); State v. Vanderhoff, [415 So.2d 190 (La. 1982)], supra; State v. Spell, supra."
In State v. Banks, 439 So.2d 407 (La. 1983), the Louisiana Supreme Court held that:
"The appropriate standard of review to be applied in determining the effect of the improper admission of evidence is whether "`the court [can] ... declare a belief that [the error] was harmless beyond a reasonable doubt.'" State v. Gibson, 391 So.2d 421, 428 (La.1980), quoting and adopting Chapman v. California, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967). The court must be able to determine, beyond a reasonable doubt, that the improperly admitted hearsay did not contribute to the verdict."
In the case currently before the court, the record reflects that the trial court admitted the hearsay testimony of Detective Kitchen over an objection by the defendant. The issue is whether the hearsay information improperly introduced at trial is merely cumulative of other properly introduced testimony.
The victim, who had already identified the defendant as her assailant, testified that the defendant told her, during the commission of the crime, that his astrological sign was Virgo. In an attempt to corroborate the testimony of the victim, the State questioned Detective Kitchen about the defendant's date of birth. Therefore, the testimony given by Detective Kitchen is merely cumulative of the testimony given by the victim. Although the State could have used a more appropriate method of proving the defendant's date of birth, for example by securing a copy of the defendant's birth certificate, the defendant did not seem to suffer any prejudice as he had an opportunity to cross-examine Detective Kitchen as to the origin of his knowledge concerning the defendant's date of birth.
Our review of the facts of this case convinces us that any error committed here was harmless error.

PUBLICITY
On May 22, 1984, the day on which testimony began, The Alexandria Daily Town Talk published an article concerning the trial which stated that the defendant had been charged with another rape. One juror admitted having read the article. The *894 defendant argues that this article resulted in substantial prejudice thereby depriving him of his right to a fair trial. Therefore, he alleges that the trial judge erred in denying his motion for a mistrial.
La.C.Cr.P. art. 775 provides in pertinent part that:
"Upon motion of a defendant, a mistrial shall be ordered, and in a jury case the jury dismissed, when prejudicial conduct in or outside the courtroom makes it impossible for the defendant to obtain a fair trial, or when authorized by Article 770 or 771."
La.C.Cr.P. art. 771 provides for an admonition to the jury by the court to disregard an immaterial or irrelevant prejudicial remark made in argument or during trial within the hearing of the jury. It also provides that the trial judge may grant a mistrial if he believes that an admonition is not sufficient to assure the defendant a fair trial. Mistrial is a drastic remedy. Unless mandatory, as in La.C.Cr.P. art. 770, it is committed to the trial court's sound discretion. A mistrial is warranted only if substantial prejudice results which would deprive defendant of a fair trial. State v. Narcisse, 426 So.2d 118 (La. 1983). Jurors must be actually exposed to the publicity and so impressed by it as to be incapable of rendering a fair and impartial verdict. State v. Russell, 416 So.2d 1283 (La.1982). The determination of whether prejudice has resulted is within the sound discretion of the trial judge, whose ruling shall not be disturbed absent an abuse of that discretion, State v. Smith, 430 So.2d 31 (La.1983); State v. Narcisse, supra. The trial judge admonished the juror who had read the article to disregard what he had read in the newspaper and to judge the defendant solely on the evidence. We do not believe that the trial judge abused his discretion by denying the motion for mistrial.
The defendant also contends that the trial court erred in denying his motion for mistrial based upon the contents of a second newspaper article. This newspaper article appeared in The Alexandria Daily Town Talk the day after the victim testified that the defendant informed her that he had a gunshot wound to his right shoulder. In ruling on this motion, the trial judge asked the jurors whether or not anyone had read this newspaper article. All jurors replied negatively. There could be no prejudicial effect where no juror read the article. Therefore, the trial judge was correct in denying the motion for mistrial.

SELF INCRIMINATION
The defendant contends that the trial court erred in denying his motion for mistrial and in overruling his objection to the State's request that the defendant expose his upper body to the jury based upon an alleged violation of the defendant's constitutional right against self-incrimination.
U.S. Const.Amend. V and La. Const. art. 1 § 16 provide in part that "... No person shall be compelled to give evidence against himself...." The Louisiana Supreme Court stated in State v. Anthony, 332 So.2d 214 (La.1976) that:
"It is settled that the privilege against self-incrimination protects an accused only from being compelled to testify against himself, or from otherwise providing the state with evidence of a testimonial or communicative nature. Schmerber v. California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966). The privilege does not mandate an exclusion of the accused's body as evidence when it may be material. State v. Wilson and Francis, 329 So.2d 680 (La.1976)."
The trial court's requirement that the defendant display a wound to his shoulder is demonstrative evidence as opposed to testimonial evidence. State v. Anthony, supra; State v. Brown, 326 So.2d 839 (La. 1975), cert. denied, 429 U.S. 918, 97 S.Ct. 310, 50 L.Ed.2d 284 (1976). In State v. Landry, 388 So.2d 699 (La.1980), the Louisiana Supreme Court held that:
"Before demonstrative evidence can be admitted into evidence it must be shown that, more probably than not, the evidence is connected to the case. That *895 foundation can be laid by establishing a chain of custody of the evidence, or by visual identification. Once that foundation is established, the weight to be given the evidence is a question for the jury. State v. Drew, 360 So.2d 500 (La.1978)."
In the instant case, the victim testified that during the rape, the defendant told her that he was wounded in the shoulder in Vietnam and he pointed to his right shoulder. The victim further testified that she could not actually see the wound because of the lighting in the room and the skin color of the defendant. This testimony is a sufficient foundation for admitting identification of the defendant's wound.

REFERENCE TO FAILURE TO TESTIFY
The defendant contends that the State committed prejudicial error by making a direct reference to the defendant's failure to testify, immediately after the defense rested his case.
The alleged reference to the defendant's failure to testify came at the close of the defendant's case:
"BY THE COURT: Call your next witness.
BY MR. SHANNON: Your Honor, we'd rest.
DEFENSE RESTS
BY THE COURT: Rebuttal?
BY MR. ROBERTS: Just one (1) minute, Your Honor. Let me collect my thoughts. I thought he had another witness."
The record reflects that the defendant failed to object to the State's remarks. La. C.Cr.P. art. 841 provides that:
"An irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence. A bill of exceptions to rulings or orders is unnecessary. It is sufficient that a party, at the time the ruling or order of the court is made or sought, makes known to the court the action which he desires the court to take, or of his objections to the action of the court, and the grounds therefor.
The requirement of an objection shall not apply to the court's ruling on any written motion."
It is well settled that objections not timely raised are not to be considered on appeal. State v. McDermitt, 406 So.2d 195 (La.1981). Accordingly, we will not consider this argument.

REQUESTED JURY INSTRUCTIONS
The defendant contends that the trial court erred by refusing to give the jury two requested jury instructions proposed by the defendant.
La.C.Cr.P. art. 807 provides that:
"The state and the defendant shall have the right before argument to submit to the court special written charges for the jury. Such charges may be received by the court in its discretion after argument has begun. The party submitting the charges shall furnish a copy of the charges to the other party when the charges are submitted to the court.
A requested special charge shall be given by the court if it does not require qualification, limitation, or explanation, and if it is wholly correct and pertinent. It need not be given if it is included in the general charge or in another special charge to be given."
In State v. Matthews, 380 So.2d 43 (La. 1980), the Louisiana Supreme Court noted that:
"While it is the duty of the trial judge to give a requested charge which does not require qualification, limitation or explanation, requested charges which are already substantially given and covered by the general charge are properly refused. State v. Badon, 338 So.2d 665 (La.1976); State v. White, 254 La. 389, 223 So.2d 843 (1969)."
In this case, the defendant requested two special charges. Requested jury instruction No. 1 was intended to instruct the jury to receive identification testimony with caution. As regards this charge, the trial court properly rejected the defendant's *896 request. The trial court's general charge included an instruction concerning the determination of the weight and credibility of the testimony and the circumstances under which a witness has testified.
Requested jury instruction No. 2 was intended to instruct the jury about the burden of proof concerning alibi testimony. This charge was also properly rejected by the trial court as the general charge contains a sufficient instruction about the burden of proof required by the State.

RECANTATION EVIDENCE
The defendant contends that the trial court erred in denying his Motion for a New Trial and to confer Judicial Immunity and by refusing to consider the testimony of two polygraph examiners on the Motion for a New Trial.
At the trial, the State called as a witness, Bruce Shelton, the brother-in-law of the defendant. He testified with regard to certain statements that the defendant made to him indicating that the defendant had committed a rape. Shortly after the guilty verdict was returned, Shelton contacted the defense counsel and recanted his former testimony stating that the defendant had made no statement to him. The defense counsel had a polygraph performed on Shelton. After obtaining that information, the defendant moved for a new trial. He alleged that the verdict was based on perjured testimony. The defendant further moved to compel a grant of judicial immunity to Shelton so that he could testify without fear of prosecution for perjury.
At the hearing on the motion for a new trial, the judge refused to grant immunity to Shelton. Shelton refused to testify, invoking his Fifth Amendment privilege against self-incrimination. The State objected to the testimony of the polygraph examiners on the grounds that they were not experts and that the State could not cross-examine Shelton as to his responses under polygraph examination. The court allowed the examiners to testify on an offer of proof. The court denied the motion stating that insufficient evidence existed upon which to grant a new trial.
The standards of review of a motion for new trial are contained in La.C.Cr.P. art. 851 which provides:
"The motion for a new trial is based on the supposition that injustice has been done the defendant, and, unless such is shown to have been the case the motion shall be denied, no matter upon what allegations it is grounded.
The court, on motion of the defendant, shall grant a new trial whenever:
* * * * * *
(3) New and material evidence that, notwithstanding the exercise of reasonable diligence by the defendant, was not discovered before or during the trial, is available, and if the evidence had been introduced at the trial it would probably have changed the verdict or judgment of guilty; ..."
In State v. Clayton, 427 So.2d 827 (La. 1982) (on rehearing), the Louisiana Supreme Court found that:
"The trial judge is afforded considerable discretion in evaluating the impact of newly discovered evidence, and his denial of a motion for a new trial will not be disturbed on appeal absent a clear abuse of that discretion. State v. Talbot, 408 So.2d 861 (La.1981) (on rehearing); State v. Spell, 399 So.2d 551 (La.1981). In evaluating whether the newly discovered evidence warrants a new trial, the test to be employed is not simply whether another jury might bring in a different verdict, but whether the new evidence is so material that it ought to produce a verdict different from that rendered at trial. State v. Molinario, 400 So.2d 596 (La. 1981); State v. Bagley, 378 So.2d 1356 (La.1979); State v. Williams, 362 So.2d 530 (La.1978). Recantations of trial testimony should be looked upon with the utmost suspicion. We have held specifically that a motion for a new trial should not be granted on the basis of a recantation because it is tantamount to an admission of perjury which would destroy the credibility of the witness *897 at a new trial. It is not an abuse of discretion on the part of the trial court to refuse to grant a motion urged on such a basis. State v. Spell, supra; State v. Linkletter, 345 So.2d 452 (La. 1977), cert. denied, 434 U.S. 1016, 98 S.Ct. 733, 54 L.Ed.2d 760; State v. Tyler, 342 So.2d 574 (La.1977), cert. denied, 431 U.S. 917, 97 S.Ct. 2180, 53 L.Ed.2d 227." [Emphasis supplied]
Examination of the record in light of the Supreme Court's holdings in Clayton, supra, convinces us that the trial judge did not abuse his discretion by denying the motion for a new trial since the motion was based on recantation testimony.

SUFFICIENCY OF THE EVIDENCE
The defendant contends that the trial court erred in that the jury's verdict of guilty of aggravated rape and aggravated burglary was based on evidence insufficient to prove beyond a reasonable doubt that the defendant committed the crimes charged.
In reviewing the sufficiency of evidence in a criminal conviction, the United States Supreme Court, in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), provided the following standard:
"... [t]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See Johnson v. Louisiana, 406 U.S. [356], at 362, 92 S.Ct., [1620], at 1624-1625, [32 L.Ed.2d 152 (1972)]."
In this case, there exists more than enough competent evidence to find the defendant guilty as charged with the crimes of aggravated rape and aggravated burglary. In addition to the out-of-court lineup identification, the victim identified the defendant as her attacker at the trial on the merits. She testified that the defendant indicated to her that his first name was Richard, that his astrological sign was "Virgo", and that he received a wound to his right shoulder during his military involvement in Vietnam. During the trial, Terry Kitchen, an investigator employed by the Alexandria Police Department, testified that the defendant's date of birth was September 5, 1946, which falls under the astrological sign of "Virgo". The defendant was required to remove his shirt and display the wound on his right shoulder to the jury. Furthermore, the State presented a witness, Bruce Shelton, who testified that the defendant made various inculpatory statements to him concerning his involvement in the rape. Although Mr. Shelton apparently recanted his testimony post-trial, he did not so testify.
One defense witness did testify that the defendant had spent the entire night of the crime at his house. However, the credibility of that witness' memory for dates was impaired by subsequent questioning.
The record seems to reflect sufficient evidence, when viewed in a light most favorable to the prosecution, to convince a reasonable trier of fact of the guilt of the defendant beyond a reasonable doubt.
For the foregoing reasons, the sentence and conviction are affirmed.
AFFIRMED.
DOMENGEAUX, J., concurs.