606 So.2d 816 (1992)
STATE of Louisiana, Plaintiff-Appellee,
v.
Erick PIERRE, Defendant-Appellant.
No. K92-307.
Court of Appeal of Louisiana, Third Circuit.
September 16, 1992.
Writ Denied November 20, 1992.
*817 J. Lomax Jordan, Jr., Lafayette, for defendant-appellant.
Kathleen Peterson, Asst. Atty. Gen., Baton Rouge, for appellee.
Before DOUCET and KNOLL, JJ., and SALOOM,[*] J., Pro Tem.
KNOLL, Judge.
This writ application concerns a pretrial motion to produce physical evidence filed by the State to obtain blood from relator to conduct deoxyribonucleic acid testing (DNA testing). After a contradictory hearing, the trial court ordered relator to give a blood sample. Relator, Erick Pierre, applied for supervisory writs to this court attacking the constitutionality of the court ordered production of evidence. We granted writs in this matter to determine the correctness vel non of the trial court's order.[1]
Relator attacks the constitutionality of the trial court's ruling on two grounds: (1) The State of Louisiana has no right to compel the blood testing because Louisiana's Constitution of 1974 gives a "higher standard of individual liberty than that afforded by the jurisprudence interpreting the federal constitution"; and, (2) The State of Louisiana must make a due process showing of probable cause before ordering relator to submit a blood sample.
The writ application shows that relator was indicted by the Grand Jury of Jefferson Davis Parish on September 4, 1990, on one count of aggravated rape, which was allegedly committed between May 1, 1988, and June 30, 1988, and one count of forcible rape, which was allegedly committed on November 7, 1989. The victim is a very young minor female; her date of birth is March 17, 1977. It is alleged that as a result of one of these rapes by relator, she gave birth to a baby on February 6, 1989, when the victim was eleven years of age. Relator submitted voluntarily to one paternity determination testing[2] prior to indictment while he was under arrest for aggravated rape and the case was still under investigation. The results of that paternity test show that relator cannot be excluded as the biological father of the victim's child because they share genetic markers; the probability of paternity was 99.87%. Initially, *818 the victim gave a statement implicating relator and naming him as the father of her baby. Now the State alleges that the victim has recanted her statement and denies that relator is the father of her baby. Furthermore, the State alleges that relator now claims that he is impotent. In view of this, the State filed this second motion for the production of physical evidence to conduct DNA testing to determine relator's probability of paternity. From the trial court's order compelling relator to submit to DNA testing, this writ followed.

SCOPE OF LOUISIANA'S CONSTITUTIONAL PRIVILEGE AGAINST SELF-INCRIMINATION
Relator contends "that the Louisiana Constitution of 1974 affords him protection and prohibits the State from compelling this evidence." Relator readily admits that the privilege against self-incrimination under the Fifth Amendment of the United States Constitution does not extend to evidence an accused is compelled to give. The Fifth Amendment of the United States Constitution provides in pertinent part: "No person ... shall be compelled in any criminal case to be a witness against himself...." U.S. Const.Amend. V.
Relator contends that Article I, Section 16, of the Louisiana Constitution of 1974 gives a higher standard of individual liberty than that afforded by the federal constitution. Article I, Section 16, of the Louisiana Constitution of 1974 states in pertinent part: "No person shall be compelled to give evidence against himself." Relator cites State v. Hernandez, 410 So.2d 1381 (La. 1982), and State v. Church, 538 So.2d 993 (La.1989), in support of his contention. Our Supreme Court has held in certain limited areas of criminal law pertaining to searches and seizures that the declaration of privacy embodied in our State constitution gives rise to a higher standard of individual liberty than that afforded under the Fourth Amendment of the United States Constitution. Hernandez concerned the search and seizure of evidence from a car parked on private property; Church concerned the search and seizure of evidence at a DWI roadblock. Relator has cited no cases supporting his contention other than in these limited areas of search and seizure that this higher standard of individual liberty has been extended to include evidence which an accused was compelled to give, e.g. blood, urine, hair, saliva, etc.
We recognize that at times our jurisprudential interpretation of the Fourth Amendment of the United States Constitution may differ from the federal jurisprudence in certain limited areas. For reasons of overriding state interest, and, finding the court ordered blood test minimally intrusive, relatively painless, and medically safe, we decline to extend the doctrine of a higher standard of individual liberty as set forth in Hernandez and Church, to include evidence which an accused may be compelled to give. For these reasons, we find no merit in this contention.

DUE PROCESS SHOWING OF PROBABLE CAUSE TO COMPEL PHYSICAL EVIDENCE
By this argument, relator contends that the State must make a due process showing of probable cause before the trial court may issue an order to compel the blood testing desired by the State. We agree. However, relator argues as though the State has failed to make a due process showing of probable cause. With this contention we disagree. We have carefully reviewed the writ application and find that it fully supports that the State made a due process showing of probable cause.
We note with significance that relator does not argue that there was insufficient probable cause in the indictment. Rather, relator is asking for a new probable cause showing patterned after the rules of civil procedure, because the determination of paternity is involved.
Relator's argument is premised upon In the Interest of J.M., 590 So.2d 565 (La. 1991). We fully agree with the pronouncements in J.M., which involved a civil suit for a determination of paternity. In J.M., the putative father challenged the constitutionality of court ordered blood testing to *819 determine paternity. The putative father in J.M. argued that LSA-R.S. 9:396 violated his right to be free from unreasonable searches and seizures under the Fourth Amendment of the United States Constitution and Article I, Section 5 of the 1974 Louisiana Constitution. He also argued that the statute violated his rights of due process and equal protection of the law under the Fourteenth Amendment of the United States Constitution and Article 1, Sections 2 and 3 of the 1974 Louisiana Constitution. This is basically the same argument relator is urging before us.
In holding LSA-R.S. 9:396 constitutional, our Supreme Court held: (1) A court order for blood testing to determine paternity is a search and seizure within the meaning of the Fourth Amendment of the United States Constitution; (2) Although a paternity action is civil, not criminal, the constitutional prohibition against unreasonable searches and seizures is still applicable; (3) The putative father's due process rights required a reasonable showing of possible paternity at a show cause hearing before a blood test was ordered; (4) Because of strong societal interest in the determination of parentage of minor children and the minimal intrusion involved, court ordered blood testing in paternity cases is constitutionally permissible if justified under the circumstances of the particular case; and, (5) That the statute did not violate the putative father's equal protection rights.
In the case before us, relator compares the civil procedure of the show cause hearing mentioned in J.M. with this criminal proceeding. He states in his brief: "In the instant case, the defendant was not provided with a hearing where evidence was presented of the mother's relationship with the alleged father, with rights of confrontation and cross-examination. In fact, no evidence was presented by the State whatsoever, much less under oath, for a prior determination of probable cause for issuance of the order to compel the blood testing." In essence, relator is urging the court to adopt a standard established in a civil proceeding to apply in a criminal proceeding. We decline to do this. We find relator's argument frivolous.
The United States Supreme Court has set forth the factors to be considered in determining whether a proposed procedural safeguard is required by due process:
"First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."
Mathews v. Eldridge, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). As in In the Interest of J.M., the risk of erroneous deprivation of the defendant's constitutional interests is substantial if the court issues a peremptory order for a blood test. Furthermore, the government has an interest in accurately establishing paternity and the identity of a criminal offender.[3] The case sub judice differs from a civil paternity case in the area of what procedural safeguards are required by due process. A civil setting requires a reasonable showing of paternity at a contradictory hearing before a blood test is ordered. However, in a criminal proceeding, in considering a due process showing of probable cause to compel an accused to produce evidence, the entire record cannot be ignored. Relator has totally ignored the criminal proceedings involved in the case sub judice. The record fully supports that sufficient procedural protections which afforded relator due process were provided before the court ordered him to submit to DNA testing.
*820 The writ application shows that the State filed a contradictory motion for the production of physical evidence. The motion showed that relator was scheduled to be tried for aggravated rape and forcible rape of the victim and that relator was claiming to be impotent. The motion mentioned his earlier blood testing showing probability of paternity at 99.87%. A contradictory hearing was held on the motion. The hearing consisted of arguments to the trial court by the State and relator's defense counsel. Relator was present.
At the hearing, the State argued that probable cause for the DNA blood testing was established with the indictment. We agree. A grand jury indictment itself establishes a prima facie case of the defendant's guilt sufficient to hold him for trial and requires enough evidence which "if unexplained and uncontradicted, warrants a conviction." See, LSA-C.Cr.P.Arts. 292, 296, and 443 (West 1992). Indeed, a valid grand jury indictment conclusively determines the existence of probable cause. State v. Howard, 325 So.2d 812, 815 (La. 1976). The State's answers and exhibits to defendant's motion for bill of particulars set forth further information to establish probable cause sufficient to warrant a second blood test. State v. Vanderhoff, 415 So.2d 190, 195 (La.1982); State v. Creel, 540 So.2d 511, 513 (La.App. 1st Cir.1989) (finding that an indictment may be effectively fleshed out by a bill of particulars).
The trial court, in ruling on the motion to produce physical evidence, may consider other pertinent evidence contained in the record. In addition to the indictment for aggravated and forcible rapes of the victim and the motions and answers for particulars and discovery, which contain much information relator now seeks under the standard of a civil rule to show cause, the record also shows: the statement of the victim implicating relator; the date of birth of the baby; the earlier paternity blood testing forms and results executed by relator, the victim, and the laboratory; motions and answers for discovery; and, the present motion which was held contradictory.
In a criminal case, unlike in a civil setting, procedural protections sufficient to afford due process are provided through the criminal procedural rules. The defendant's privacy interests are protected from erroneous deprivation by adequate criminal procedural safeguards such as the grand jury indictment, the right to seek a preliminary examination, his ability to move for a bill of particulars and discovery, and the contradictory hearings on motions such as was had in the present case.
We should not become disoriented because the evidence the State seeks the defendant to produce concerns the determination of paternity. Our courts have consistently held that demonstrative evidence as opposed to testimonial evidence does not fall within the well recognized constitutional protection against self-incrimination, such as blood, saliva, penile discharge samples, fingerprints, voice exemplars, and showing of bodily markings such as tattoos and scars. (See, e.g., State v. Carthan, 377 So.2d 308 (La.1979); State v. Sheppard, 350 So.2d 615 (La.1977); State v. Crochet, 354 So.2d 1288 (La.1977); State v. Bibbens, 525 So.2d 255 (La.App. 1st Cir. 1988); State v. Reynolds, 473 So.2d 886 (La.App. 3rd Cir.1985)).
Such demonstrative evidence is incriminating, but we do not deem such evidence more devastating when, as here, it involves the determination of paternity. To require a special probable cause hearing for the production of evidence to determine paternity in criminal cases rather than considering the record of the criminal proceedings, we find would further be ignoring the discovery rules in criminal proceedings. It is axiomatic that a criminal defendant is not entitled to full discovery. The determination of paternity in a criminal proceeding, notwithstanding any civil effects, does not entitle a defendant to full discovery or discovery under civil proceedings, as relator is suggesting in this case. At the contradictory hearing on the motion to compel evidence it is proper for the trial court to consider the entire record in determining whether the State is entitled to the evidence *821 it is seeking from a defendant, as was done in the case at hand.
Hence, the present defendant's blood does not deserve more protection than other demonstrative evidence because the determination of paternity is concerned. Accordingly, we find that due process does not require a separate probable cause hearing in a criminal setting where the existing criminal procedural safeguards adequately ensure due process, and the record shows sufficient probable cause for the testing.
Finally, relator argues that the State does not have the right to test his blood because although LSA-R.S. 15:441.1 provides that evidence of the blood offered to establish the identity of the offender of any crime is relevant, that it might not be admissible into evidence at trial. This argument is misplaced. The evidence is material and relevant in the pending rape trial. A determination of admissibility of the evidence is addressed more appropriately at trial on the merits when the evidence is tendered for admission. See, LSA-C.E.Arts. 401-403.
Accordingly, we conclude that the trial court properly ordered relator to submit blood for DNA testing.
For the foregoing reasons, the writ is denied, and this matter is remanded to the trial court for further proceedings. Relator is cast with all costs of this writ application.
WRIT DENIED.
SALOOM, J. Pro Tem., respectfully dissents and would deny the writ in part, grant in part and make same peremptory. An indictment establishes the existence of probable cause for prosecutorial purposes but does not in itself afford validity for issuance of a search warrant unless other requirements are satisfied. La. Const. art. 1, Sec. 5; La.C.Cr.P. art. 162; State v. Case, 363 So.2d 486 (La.1978) and State v. Roubion, 378 So.2d 411 (La.1979).
NOTES
[*] Judge Kaliste Saloom participated in this decision by appointment of the Louisiana Supreme court as Judge Pro Tempore.
[1] The trial court stayed the proceedings pending our determination.
[2] The record does not show what type test was used for this determination.
[3] Not only are blood tests sanctioned to establish paternity and the identity of a criminal offender, but LSA-C.Cr.P. Art. 499 also sanctions testing of persons indicted by a grand jury for a sexual offense as defined in R.S. 14:42 through 43.4 for sexually transmitted diseases, the acquired immune deficiency syndrome (AIDS) virus, the human immune deficiency (HIV-1) virus, antibodies to such viruses or any other probable causative agent of AIDS. LSA-R.S. 15:535 also sanctions such testing for convicted sexual offenders.