525 So.2d 255 (1988)
STATE of Louisiana
v.
Gene BIBBENS.
No. KA 87 1199.
Court of Appeal of Louisiana, First Circuit.
April 19, 1988.
*256 Bryan Bush, Dist. Atty. by Sue Bernie, Asst. Dist. Atty., Baton Rouge, for plaintiff/appellee.
Office of the Public Defender, Baton Rouge, for defendant/appellant.
Before LOTTINGER, EDWARDS and ALFORD, JJ.
EDWARDS, Judge.
Gene Bibbens was convicted of aggravated rape and aggravated burglary, in violation of LSA-R.S. 14:42 and 60, respectively. He was sentenced to life imprisonment at hard labor, without benefit of parole, probation, or suspension of sentence, for the aggravated rape conviction. He received a concurrent sentence of thirty years at hard labor for the aggravated burglary conviction. The defendant has appealed, alleging five assignments of error.

FACTS
At approximately 2:00 a.m. on June 25, 1986, the victim, a thirteen year old girl, was raped at knifepoint. She identified the defendant as her assailant. When the attack occurred, the victim was spending the *257 night with her aunt, Judy Tasco, who lived in an apartment complex. The victim's bedroom was on the second floor of the apartment. Apparently, the defendant climbed a pole outside her window, opened it, placed the box fan on the floor, and entered the bedroom. The victim testified that she awoke as the defendant jumped in through the window, but he immediately placed a knife to her throat and threatened to kill her if she moved. After the defendant raped her, he took a small radio belonging to her cousin and exited through the window.
When the defendant left, the victim immediately told her aunt what had happened and her aunt called the police. The victim gave the police a physical description of her assailant, and she told them what he was wearing. She also informed them that he had taken the radio. While the police were still questioning the victim, a suspect, Walter Jackson, was brought to the apartment. However, the victim informed the police that Walter Jackson was not her assailant. Shortly thereafter, Baton Rouge Police Officer Robin Davis stopped the defendant, who was walking on Highland Road three to four blocks from the scene of the rape. Officer Davis observed that the physical description given by the victim matched the defendant. The defendant was also wearing a red and white striped shirt and had a gold earring, both of which matched the description given by the victim. The defendant was also carrying a small, portable radio. Officer Davis brought the defendant back to the victim's apartment. The victim came outside and identified the defendant, who was seated in the back of a police car, as being the same man who had raped her approximately one hour earlier.

ASSIGNMENT OF ERROR NUMBER ONE
In this assignment of error, the defendant contends that the trial court erred in granting the State's motion to compel blood and saliva samples.
It is well established that the Fifth Amendment restriction against selfincrimination applies only to testimonial evidence. Identifying physical characteristics, such as fingerprints, blood, urine, breath, etc., are outside the protection afforded by this privilege. State v. Taylor, 422 So.2d 109, 116 (La.1982), cert. denied, 460 U.S. 1103, 103 S.Ct. 1803, 76 L.Ed.2d 367 (1983); State v. Robertson, 509 So.2d 95, 97 (La.App. 1st Cir.1987). Defendant argues that because the trial court allowed the prosecution to retake his blood and saliva samples during the course of the trial,[1] his constitutional right against selfincrimination was violated and his defense was prejudiced and disrupted. We disagree.
The record shows that the samples were taken during the lunch recess. The delay of approximately forty-five minutes was not unreasonable. The record also reflects that the jury was told that the recess was caused by difficulty in scheduling and producing certain witnesses.
This assignment of error is without merit.

ASSIGNMENT OF ERROR NUMBER TWO
In this assignment of error, the defendant contends that the trial court erred in admitting into evidence, over defense objection, State Exhibits 1, 2, 3, 13, 14, 18, and 19.[2] The defendant argues that these photographic exhibits should have been excluded because it was never established who took the pictures.
Generally, photographs are admissible in evidence when they are shown to have been accurately taken, to correctly represent the subject in controversy, and when they shed light upon the matter before the court. State v. Robertson, 454 So.2d 205, 210 (La.App. 1st Cir.), cert. denied, *258 458 So.2d 487 (La.1984). A proper foundation for admission in evidence of a photograph is laid when a witness having personal knowledge of the subject depicted by the photograph identifies it as such. State v. Jones, 496 So.2d 638, 640 (La.App. 1st Cir.1986). It is well settled that the photograph need not be identified by the person who took it to be admissible in evidence. State v. Leggett, 363 So.2d 434, 439 (La.1978).
State Exhibits 1, 2, 3, and 18 depict the back of the victim's apartment and the window through which the assailant entered. The record reflects that these pictures were identified by the victim. State Exhibits 13 and 14 are pictures of the victim's bedroom. These pictures were taken by the crime scene investigator, Baton Rouge Police Officer Ted Day. The record reflects that Officer Day identified these photographs and testified that they accurately depicted the scene of the crime.
This assignment of error is without merit.

ASSIGNMENT OF ERROR NUMBER THREE
In this assignment of error, the defendant contends that the trial court erred in sustaining a State objection to the questioning of a defense witness, Carla Thompson.
During the trial, defense counsel questioned both the victim and her aunt, Judy Tasco, about an alleged altercation between the victim and Judy Tasco's boyfriend. After the State rested its case, the defense called Carla Thompson to the stand. Ms. Thompson testified that she lived in the same apartment complex as the victim. She also testified that the defendant lived in these apartments with his sister. However, when the prosecutor attempted to question Ms. Thompson about the alleged altercation between the victim and Judy Tasco's boyfriend, the prosecution objected.
Out of the jury's presence, the trial court asked defense counsel to explain the relevance of this line of questioning. Defense counsel explained that this alleged altercation had resulted in threats against the victim by Judy Tasco's boyfriend. Defense counsel stated: "[T]he testimony of this witness will link upwill link up the credibility of the victim and the possibility of some other reasons why the victim named this defendant because of the threats that was (sic) created by the aunt's boyfriend." Defense counsel also suggested that the scratch on the victim's neck could have resulted from the altercation between the victim and Judy Tasco's boyfriend, rather than from the defendant's knife during the rape. However, the trial court was not impressed with these reasons, concluded that the line of questioning was irrelevant, and sustained the prosecution's objection.
While evidence of bias in the particular case on trial is admissible, LSA-R.S. 15:492, such bias on the part of a witness must be shown to be direct or personal against the defendant, rather than indirect or general in nature. State v. Raymond, 447 So.2d 51, 54 (La.App. 1st Cir.), cert. denied, 449 So.2d 1347 (La.1984). In a criminal trial, each side has the right to impeach the credibility of a witness sworn on behalf of the other side. LSA-R.S. 15:486. However, the witness may only be impeached with matters that are material and relevant to the issues in the trial. LSA-R.S. 15:494. Moreover, the trial court's ruling on the relevancy of evidence will not be disturbed on appeal in the absence of a showing of manifest abuse of discretion. State v. Raymond, 447 So.2d at 54.
The fact that the victim and Judy Tasco's boyfriend had a fight would not demonstrate that the victim had a direct or personal bias against the defendant. We agree with the trial court's ruling that the testimony which defense counsel sought to elicit from Ms. Thompson about the alleged altercation between the victim and Judy Tasco's boyfriend was not relevant to the instant case.
This assignment of error is without merit.

*259 ASSIGNMENT OF ERROR NUMBER FOUR
In this assignment of error, the defendant contends that there was insufficient evidence to convict him of aggravated rape and aggravated burglary.[3]
The standard of review for the sufficiency of the evidence to uphold a conviction is whether or not, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could conclude that the State proved the essential elements of the crime beyond a reasonable doubt. See LSA-C.Cr.P. art. 821; State v. Korman, 439 So.2d 1099 (La.App. 1st Cir.1983).
In this case, the evidence of the defendant's guilt of the offenses of aggravated rape and aggravated burglary was overwhelming. The thirteen year old victim testified that she was spending the night with her aunt when these offenses occurred. The defendant entered her bedroom through the window, placed a knife to her throat, and threatened to kill her if she moved. During the rape, the defendant scratched the victim's neck with the knife.
After the rape, the defendant left through the window, taking a small, portable radio with him. The victim immediately told her aunt, who called the police. The victim described her assailant as having a beard, moustache, and "low hair." She also told the police that her assailant was wearing a red and white striped shirt and had a gold earring in his left ear. Within an hour after the rape, Officer Davis stopped the defendant, who was walking on Highland Road three to four blocks from the scene of these offenses. Officer Davis noticed that the defendant was wearing a red and white striped shirt and had a gold earring in his left ear. Officer Davis also noticed that the defendant (who was carrying a small, portable radio) matched the physical description given by the victim. Officer Davis took the defendant back to the victim's apartment. The victim identified the defendant, who was sitting in the back seat of the police car, as being the man who had raped her approximately one hour earlier. She identified the portable radio which the defendant had been carrying when he was apprehended as the one taken by the rapist.
The victim was then transported to Woman's Hospital and examined by Dr. Clifford Swartzenburg. Dr. Swartzenburg testified that he found live sperm in the victim's vagina and that, in his expert opinion, the sperm had been deposited in her vagina within the previous six hours.
Shirley Ziegler, a forensic scientist at the Louisiana State Police Crime Laboratory, testified that her test results on the defendant's blood indicated that he had Type B blood and that he was a secretor. She further testified that the test which she ran on the victim's bedsheet, underpants, and vaginal swab also indicated that the semen and the seminal stains were left by a Type B secretor. Finally, she testified that only 6.4 percent of the population would be classified as Type B secretors.
In his brief, the defendant argues that there was conflicting testimony about the victim's identification of him while he was seated in the back of Officer Davis' police car. The defendant also points out that a defense witness, Walter Jackson, testified that after the victim informed the police that he was not her attacker, he heard her describe the assailant as a man with long, curly hair. This was contrary to the testimony of the victim, who described the assailant as having a beard, moustache, and low cut hair.
After hearing all of the evidence in this case, the jury concluded that the defendant was guilty of aggravated rape and aggravated burglary. The instant guilty verdicts indicate that the jury was not distracted by the minor discrepancies in the testimony of the State's witnesses. Furthermore, the jury obviously concluded that the victim's *260 testimony about her description of the assailant's haircut was credible and rejected the testimony of defense witness Walter Jackson on this point. The trier of fact may accept or reject, in whole or in part, the testimony of any witness. Furthermore, when there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. State v. Richardson, 459 So. 2d 31, 38 (La.App. 1st Cir.1984).
After a careful review of the record, we are convinced that a rational trier of fact, viewing the evidence in the light most favorable to the prosecution, could have concluded that the State proved beyond a reasonable doubt that the defendant was guilty of aggravated rape and aggravated burglary.
This assignment of error is without merit.

ASSIGNMENT OF ERROR NUMBER FIVE
In this assignment of error, the defendant contends that the trial court erred in imposing excessive sentences and in failing to comply with the sentencing guidelines of LSA-C.Cr.P. art. 894.1.
The Code of Criminal Procedure sets forth the factors which must be considered by the trial court before imposing sentence. LSA-C.Cr.P. art. 894.1. The trial court need not recite the entire checklist of article 894.1, but the record must reflect that it adequately considered the guidelines. State v. Davis, 448 So.2d 645, 653 (La. 1984).
A review of the individual excessiveness should consider the circumstances of the crime and the trial court's stated reasons and factual basis for its sentencing decision. State v. Lewis, 489 So.2d 1055, 1061 (La.App. 1st Cir.), cert. denied, 493 So.2d 1218 (La.1986). Although a sentence falls within statutory limits, it may be excessive. State v. Sepulvado, 367 So.2d 762, 767 (La.1979). However, the trial court has wide discretion in the imposition of sentences; and a sentence within statutory limits will not be set aside in the absence of an abuse of discretion. State v. Johnson, 486 So.2d 853 (La.App. 1st Cir. 1986).
Reviewing the article 894.1 guidelines, the sentencing record reflects that the trial court found many aggravating circumstances. The pre-sentence investigation indicated that the defendant had a considerable criminal record, consisting of both juvenile and adult offenses. After reviewing the defendant's juvenile record, the trial court specifically noted that, as an adult, the defendant had been convicted of felony theft, misdemeanor theft, and simple burglary. The trial court also noted that the pre-sentence investigation included several other misdemeanor arrests and convictions. Referring to the instant offenses, the trial court concluded that lesser sentences would deprecate the seriousness of these offenses. Finally, the trial court noted that the defendant was not eligible for probation and concluded that he was in need of correctional treatment.
For his conviction of aggravated rape, the defendant received the mandatory sentence of life imprisonment at hard labor, without benefit of parole, probation, or suspension of sentence. See LSA-R.S. 14:42. In his brief, the defendant argues that a mandatory sentence imposed without giving the trial judge the power to weigh factors which could mitigate the seriousness of the offense is unconstitutional. However, this argument was addressed and rejected in State v. Foley, 456 So.2d 979, 981 (La.1984), wherein the Louisiana Supreme Court held that the mandatory life sentence for aggravated rape is a valid exercise of the state legislature's prerogative to determine the length of sentences for crimes classified as felonies. See also State v. Hookfin, 476 So.2d 481, 494 (La. App. 1st Cir.1985).
For his aggravated burglary conviction, the defendant received a maximum sentence of thirty years at hard labor. See LSA-R.S. 14:60.. The defendant contends that the trial court did not give any reasons for the imposition of this maximum sentence *261 and that the maximum sentence was excessive. Contrary to this argument, the sentencing record clearly indicates that the trial court considered the pre-sentence investigation and noted many aggravating circumstances before imposing the instant sentences. Although this Court has stated that the maximum sentence permitted under statute may be imposed only in cases involving the most serious offenses and the worst offenders, State v. Easley, 432 So.2d 910, 914 (La.App. 1st Cir.1983), we find no abuse of discretion by the trial court in imposing the maximum sentence for the defendant's aggravated burglary conviction. Clearly, the instant offense constituted the most serious type of offense in the category of aggravated burglary, since the defendant also committed aggravated rape of a thirteen year old girl.
This assignment of error is without merit.
Accordingly, for the above reasons, the convictions and sentences are affirmed.
AFFIRMED.
NOTES
[1] Apparently, the earlier samples taken from the defendant had been lost or misplaced.
[2] State Exhibit 19 is not considered herein, because the record reflects that the trial court actually sustained the defendant's objection to the introduction into evidence of this photograph.
[3] We note that, in order to challenge a conviction on the basis of insufficiency of the evidence, the defendant should have proceeded by way of a motion for post-verdict judgment of acquittal. See LSA-C.Cr.P. art. 821; State v. Korman, 439 So.2d 1099 (La.App. 1st Cir.1983). Nevertheless, we will consider a claim of insufficiency of the evidence which has been briefed pursuant to a formal assignment of error.