767 So.2d 76 (2000)
BOISE CASCADE CORPORATION
v.
Earnest L. DEAN.
No. 99-1356.
Court of Appeal of Louisiana, Third Circuit.
May 3, 2000.
Rehearing Denied July 26, 2000.
Writ Denied November 13, 2000.
*77 Russell L. Sylvester, Brittain and Sylvester, Natchitoches, Counsel for Plaintiff AppelleeAppellant.
George A. Flournoy, Fuhrer, Flournoy, Hunter and Morton, Alexandria, Counsel for DefendantAppellantAppellee.
(Court composed of JOHN D. SAUNDERS, BILLIE COLOMBARO WOODARD and ELIZABETH A. PICKETT, Judges.)
SAUNDERS, Judge.
This matter arises from a workers' compensation matter wherein the Defendant, during his employ with Boise Cascade, worked as a twin resaw operator and was injured. Boise Cascade sought to terminate the Defendant's compensation benefits, asserting that the Defendant was intoxicated after he tested positive for marijuana, that Defendant did not use proper safety procedures, and that Defendant committed fraud under La.R.S. 23:1208. The Defendant then filed a La. R.S. 23:1208 claim against Boise Cascade, alleging that Boise Cascade made false statements about the safety procedures at the mill in order to terminate the Defendant's benefits.
Finding he violated La.R.S. 23:1208, the workers' compensation judge terminated the Defendant's benefits and sanctioned Boise Cascade $3,000.00, finding that it also violated La.R.S. 23:1208. We affirm in part, reverse in part and render.

FACTS
Earnest L. Dean, "Defendant," worked for Boise Cascade, "Plaintiff," as a twin band saw operator in Fisher, Louisiana. His job involved guiding logs with hydraulic chains so as to run the logs through the two saws. Before beginning his shift on April 8, 1998, Defendant noticed that the infeed rollers to his machinery were running *78 too slow. About five minutes before beginning the swing shift at 6:00 p.m., Defendant spoke with Jerry Manasco, a millwright, and asked him to adjust the speed of the hydraulic chains to speed up the rollers. Manasco and another millwright were then called to work on another piece of machinery in the mill, a pony edger. Defendant observed Manasco leave to work on the pony edger and never saw him again until after the accident.
Meanwhile, the whistle sounded to start the shift and Defendant began running his machinery. Defendant cut about six logs when he hit a nail. To inspect the saw blades, Defendant shut down the equipment, including turning the saws and rollers off, opening up the band saws, informing the filer that he hit metal, and then locking out the two saws with the two padlocks he was given; Defendant did not shut off the hydraulic power as this was not part of what Defendant customarily did during the shutdown procedure. This procedure took between ten and fifteen minutes. Defendant just began to rotate the saws to inspect the teeth, holding onto the chains for leverage, when Manasco began adjusting the speed of the chains from the basement below and, in doing so, turned on the rollers. When the chains began to move, Defendant grabbed the chains for balance. Defendant's hands got caught up in the sprocket, which tore up his hands and amputated five of his fingers in whole or in part.
Defendant was first taken to Sabine Medical Center in Many and then transferred to Willis-Knighton Hospital in Shreveport, where he was administered a drug test. Defendant's urine tested positive for marijuana at 52 ng/ml.
Defendant received medical benefits for his acute medical needs until June 4, 1998, when those benefits were terminated. On May 27, 1998, Defendant's remaining compensation benefits were terminated after Plaintiff filed a claim with the Office of Workers' Compensation, "OWC," on May 15, 1998, seeking termination of Defendant's benefits based on Defendant's positive marijuana test and on his failure to follow safety guidelines, which led up to the accident. Later, Plaintiff also brought a La.R.S. 23:1208 claim seeking termination of Defendant's benefits on the basis of Defendant's misrepresentation of his history of marijuana use. Defendant then brought a La.R.S. 23:1208 claim against Plaintiff, who in an effort to deprive Defendant of benefits, misleadingly asserted that Defendant failed to follow proper safety procedures.

LAW AND ANALYSIS

A. Defendant's Assignment of Error
Defendant argues that the workers' compensation judge, "WCJ," made legal error when she found that his initial misrepresentation of his history of marijuana use mandated a La.R.S. 23:1208 forfeiture of all benefits. The WCJ explained in her opinion on the merits:
The forfeiture provisions contained in La.R.S. 23:1208 are harsh and penal in nature; this is particularly so under circumstances such as the injury suffered by Earnest Dean. Although the provisions are to be strictly construed, the Court cannot, even under these circumstances, abrogate from the unambiguous provisions set forth by the legislature. Those provisions require the forfeiture of workers' compensation benefits if the employee 1) makes a false statement or representation, 2) if such statement or representation is willingly made, and 3) if such statement or representation is made for the purpose of obtaining workers' compensation benefits.
The supreme court in Alexander v. Pellerin Marble & Granite, 93-1698, p. 5-6, (La.1/14/94); 630 So.2d 706, 710, discussed the standard of appellate review in workers' compensation cases:
The appropriate standard for appellate review is the "manifest error-clearly wrong" standard, which precludes the setting aside of a trial court or jury's *79 findings of fact unless those findings are clearly wrong in light of the record reviewed in its entirety.
The same standard of appellate review applicable to factual findings of district courts is also applicable to the factual findings of an administrative body or hearing officer.
(Citations omitted.)
As the WCJ noted, the three elements of the Resweber v. Haroil Const. Co., 94-2708 (La.9/5/95); 660 So.2d 7, analysis for finding fraud for the purposes of La.R.S. 23:1208, are: "that (1) there is a false statement or representation, (2) it is willfully made, and (3) it is made for the purpose of obtaining or defeating any benefit or payment." Id., at 12. The record reveals Defendant made a false statement in his deposition when he stated that prior to the Saturday before the Wednesday accident, he had not used marijuana since 1985. Defendant later told his attorney about this false statement, and his attorney then sought to remedy the situation by mailing a letter to Plaintiff, explaining that Defendant did, in fact, smoke marijuana on weekends three to four times a month. The first two elements of the Resweber requirements are not in dispute; Defendant misrepresented his history of marijuana use and he did it willfully. At issue is the last prong of Resweber, which requires Defendant to have lied for the purpose of obtaining benefits. Defendant testified that he was not aware of any claims of fraud on the part of Plaintiff at the time he went to his attorney's office to talk about his prior marijuana use. If Defendant had intended to defraud the Office of Workers' Compensation to get benefits, his later rendition of the truth did nothing to help his claimin fact, the WCJ's use of La.R.S. 23:1208 to punish his desire to correct his earlier misstatement does nothing but discourage such remedial acts. It is clear from the record that Defendant readily admitted his use of marijuana on the Saturday before the accident. Defendant explained to the WCJ that, at the time of the deposition, he was afraid of losing his attorney if he admitted to his history of marijuana use. There is nothing to contradict this, and there is nothing to show that Defendant had any reason to believe that lying about his past use of the drug would somehow help his case. The WCJ concluded:
Although Dean urged in Court, and through counsel beforehand, that the reason he made the false statement concerning his drug usage was because he was afraid that his attorney would no longer represent him, the Court is persuaded, under the totality of the circumstances, that Dan [sic] knew that his false statement would aid his attempts to gain workers' compensation benefits. Although a collateral reason for making the false statement may have been his real fear that he would lose the benefit of counsel, this nevertheless does not abrogate from the Court's conclusion that Dean gave false deposition testimony, willfully, and for the purpose of obtaining workers' compensation benefits. Although the employer, in fact, appears to have suffered no prejudice from the speedy correction of Dean's testimony through his counsel, as our Supreme Court stated in Resweber v. Haroil Const. Co., 660 So.2d 7 (La.1995), Section 1208 imposes no requirement that the employer be prejudiced.
We agree that the record shows Defendant made the false statement, and knowingly did so, but we disagree that he did it for the purpose of obtaining workers' compensation benefits. Defendant gave the hearing officer a plausible reason for his false statement, and it was not refuted. The WCJ, however, preferred to assume that he must have done it with the intent to get benefits, but an even more plausible assumption, if Defendant's explanation is not to be accepted, is that his reticence was rooted in the obvious criminality of the act. Regardless, the record indicates that the purpose for Defendant's false statements has not been shown, by the "totality *80 of the circumstances," or otherwise, to have been the wrongful receipt of compensation benefits. We are, therefore, compelled to find manifest error in the WCJ's conclusion that under La.R.S. 23:1208, Defendant must lose his compensation benefits.

B. Plaintiff's First Assignment of Error
Plaintiff assigns as legal error the WCJ's finding that Defendant rebutted the presumption of intoxication of La.R.S. 23:1081 once he tested positive for marijuana. We disagree. As the WCJ discussed, she gave Plaintiff the presumption and then shifted the burden of proof to Defendant to show that the accident did not occur as a result of his intoxication. Numerous co-workers spoke or interacted with Defendant on the day of the accident, and not one of them found anything unusual about his behavior or thought he might be intoxicated. Further, the WCJ found that the expert testimony established the length of time of real impairment after smoking marijuana as somewhere between five and six hours. This, combined with the fact that there is nothing in the record to indicate Defendant smoked marijuana on April 8, 1998, leads this court to agree with the WCJ that the overwhelming evidence in the record supports a finding that Defendant was not acting under the effects of the drug at the time of the accident.

C. Plaintiff's Second Assignment of Error
Plaintiff argues that the WCJ committed manifest error when she found Plaintiff violated La.R.S. 23:1208 when it claimed Defendant did not follow proper procedures. On the accident investigation form, it was reported by Defendant's supervisors that the accident occurred because Defendant failed to lockout all power sources. Ray McComic, production superintendent for Plaintiff, testified that the lockout procedure in place at the time Defendant was injured required Defendant to press the emergency power shutoff button before he began the procedure of inspecting the saw blades. He admitted that Defendant could not have locked out all of the power sources since he was issued only two locks. McComic explained that since the time of the accident, a new procedure has been implemented which now requires the use of five locks.
McComic's discrepancy arises where he gave testimony describing a demonstration of the shutdown procedure for when an operator hits a nail or metal. The demonstration was performed by Delton Lee "T.C." Edmonson, the senior saw operator that worked the day shift before Defendant's swing shift. McComic testified that the first thing T.C. did in his demonstration for McComic, Russell Sylvester, Plaintiff's attorney, Andy Storer, claims manager handling Defendant's claim against Plaintiff, and Louis Faucheaux, the employee relations manager for Plaintiff, was to press the emergency stop button. Yet, when T.C. testified, he unhesitatingly explained that pressing the emergency stop button to shut off all power was never the first or second thing to do when an operator hit metal. T.C. further noted that he was never taught to do that, and more importantly, he adamantly denied having pressed the emergency stop button on the day that he gave the demonstration for McComic, Sylvester, Storer, and Faucheaux.
Regarding the hydraulic pumps, Walter Williams, Jr., the saw filer on duty when Defendant got hurt, supported Defendant's explanation of proper lockout procedure, and he recalled that he had never, prior to Defendant's accident, been instructed to turn off the hydraulic pump switch when checking the saws.
In sum, a reading of all the testimony describing the lockout and shutdown procedures involved when an operator hits metal convinces this court, as it did the WCJ, that Defendant acted completely within the methods prescribed by Plaintiff. Further, we find T.C.'s testimony to be *81 quite convincing, and we find it clear from the record that Plaintiff willfully sought to misguide the WCJ in its claims that Defendant did not act within the established procedures of the saw mill. Accordingly, we agree with the WCJ's application of La.R.S. 23:1208 to penalize Plaintiff $3,000.00 for its willful and fraudulent conduct.

D. Plaintiffs Third Assignment of Error
Plaintiff claims that the WCJ is manifestly erroneous in assessing Plaintiff with all costs of this matter based on her finding that Plaintiff violated La.R.S. 23:1208. The hearing officer discussed:
Additionally, due to the nature of the false statements made by the employer's representativewhich resulted in Dean's expenditure of costs to defend this action which he may not have otherwise have had to expend, as well as the Court's consideration of the continued perpetuation of McComic's false representation, all costs will be assessed against Boise.
Washington v. Lyons Specialty Co., 96-0263, p. 22-23 (La.App. 1 Cir. 11/8/96); 683 So.2d 367, 381, explains appellate review of a WCJ's assessment of costs, to wit:
Except as otherwise provided by law, the court may render judgment for costs, or any part thereof, against any party, as it may consider equitable. La. C.C.P. art.1920. Thus, under general civil law, the question of awarding costs is discretionary with the trial judge, except as otherwise provided by law. Smith v. Two "R" Drilling Company, Inc., 606 So.2d 804, 816 (La.App. 4th Cir.), writ denied, 607 So.2d 560 (La. 1992). Under workers' compensation law, costs may be awarded by the hearing officer, in his discretion, and when so awarded the same may be allowed, taxed, and collected as in other civil proceedings. La.R.S. 23:1317. Accordingly, the question of awarding costs under both the general civil provisions and the specific workers' compensation statute, is within the sound discretion of the court or the hearing officer.... On review, the trial court's assessment of costs can be reversed only upon a showing of an abuse of discretion. Thibodeaux v. USAA Casualty Insurance Company, 93-2238 (La.App. 1st Cir.11/10/94); 647 So.2d 351, 362.
In light of our agreement with the WCJ's sanctions under La.R.S. 23:1208 against Plaintiff, and in light of our disagreement with her termination of Defendant's benefits under the same statute, we readily find the WCJ's sanctions against Plaintiff for its willful, egregious, and unconscionable behavior without error.

ATTORNEY'S FEES
In light of Plaintiff's attempted "sham defense," we find Plaintiff's termination of Defendant's benefits and its unscrupulous attempt to defraud Defendant of his rightful compensation benefits, arbitrary, capricious, without probable cause, and particularly egregious. See Britton v. City of Natchitoches, 97-1038 (La.App. 3 Cir. 2/11/98); 707 So.2d 142, writ denied, 98-1203 (La.6/26/98); 719 So.2d 1057.
Hence, under La.R.S. 23:1201.2[1], we now assess Plaintiff for $10,000.00 in attorney's fees for work done at trial and on appeal.

CONCLUSION AND DECREE
Under La.R.S. 23:1208, we find Defendant did not commit fraud with the purpose of procuring compensation benefits. We reverse the WCJ's rule revoking all *82 compensation benefits to Defendant, Ernest L. Dean, and we affirm the WCJ's rule sanctioning Plaintiff, Boise Cascade Corporation, $3,000.00 for its fraudulent behavior designed to deny Defendant compensation benefits.
Additionally, in light of Plaintiff's egregious and blatant attempt to deprive this permanently crippled worker of compensation benefits, we order Plaintiff to pay $10,000.00 for Defendant's attorney's fees for work done at the hearing level and on appeal. We affirm the WCJ's judgment assessing all costs at the administrative level against Plaintiff, and we now assess all costs of appeal against the same.
AFFIRMED IN PART, REVERSED IN PART and RENDERED.
SAUNDERS, J., concurs with reasons.
SAUNDERS, J., concurring with reasons.
While I agree with the result of the majority opinion, I would find the same based on the unconstitutionality of La.R.S. 23:1208.
In Grant v. Natchitoches Manor Nursing Home, 96-1546 (La.App. 3 Cir. 5/14/97); 696 So.2d 73, writ denied, 97-1582 (La.10/17/97); 701 So.2d 1330, after finding the claimant did not act willfully in misrepresenting a prior knee injury, this court, on its own motion, found the hearing officer did not have subject matter jurisdiction over the adjudication of the claim of willful misrepresentation, i.e. fraud. We provided the following discussion, which I would adopt in toto and apply to the matter before us:
Wholly apart from the substantive errors made by the hearing officer, on our own motion, we notice the want of the lower tribunal's subject matter jurisdiction as it pertains to a claim for forfeiture of benefits as provided for in La. R.S. 23:1208.
Jurisdiction is the legal power and authority of a court to hear and determine an action or proceeding involving the legal relations of the parties, and to grant the relief to which they are entitled. La.Code Civ.P. art. 1. Subject matter jurisdiction is the legal power and authority of a court to hear and determine a particular class of actions or proceedings, based upon the object of demand, the amount in dispute, or the value of the right asserted. La.Code Civ.P. art. 2. A judgment rendered by a court which has no jurisdiction over the subject matter of the action or proceeding is void. La.Code Civ.P. art. 3. Unlike other exceptions, the exception of subject matter jurisdiction is an issue that cannot be waived or conferred by the consent of the parties. Tran v. Schwegmann's Giant Super Market., 609 So.2d 887 (La.App. 4 Cir.1992). The exception of subject matter jurisdiction can be raised at any stage of a proceeding, and an appellate court may raise the exception on its own motion. Colacurcio, III v. Ledet, 94-1798 (La.App. 4 Cir. 9/28/95); 662 So.2d 65.
Effective November 7, 1990, La. Const. art. V, § 16 was amended to provide for original jurisdiction of all civil and criminal matters in district courts, except as otherwise authorized by the constitution or "except as heretofore or hereafter provided by law for administrative agency determinations in worker's compensation matters." Sampson v. Wendy's Management, Inc., 593 So.2d 336, 337 (La.1992). Consistent with this constitutional provision, the office of worker's compensation was granted original, exclusive jurisdiction over claims for any compensation or benefits, La.R.S. 23:1310.3. However, as the Supreme Court has observed such subject matter jurisdiction was not granted to adjudicate disputes or obligations imposed by the workers' compensation act that fall beyond "benefit and penalties directly associated with the employee's work-related injury and his receipt of workers' compensation benefits. See *83 LSA-R.S. 23:1291 et seq." Sampson, 593 So.2d at 339.
La.R.S. 23:1208, the provision upon which the hearing officer relied, provides in pertinent part:
§ 1208 Misrepresentations concerning benefit payments; penalty; civil immunity
A. It shall be unlawful for any person, for the purpose of obtaining or defeating any benefit or payment under the provisions of this Chapter, either for himself or for any other person, to willfully make a false statement or representation....
. . . .
E. Any employee violating this section shall, upon determination by hearing officer, forfeit any right to compensation benefits under this Chapter.
In Resweber v. Haroil Const. Co., 94-2708, p. 7 (La.9/5/95); 660 So.2d 7, the supreme court outlined requirements for a forfeiture of benefits under La.R.S. 23:1208: a false statement or representation willfully made for the purpose of obtaining or defeating any benefit or payment. Significantly, La. R.S. 23:1208 has been construed to represent an absolute bar to compensation benefits, regardless of whether the misrepresentations pertain to the injury for which an injured employee seeks benefits.
Section 1208 is clear and unambiguous and as such will be applied as written. La.Civ.Code art. 9; La.R.S. 1:4. Section 1208 clearly applies to any willful false statements or representations made "for the purpose of obtaining or defeating any benefit or payment." Section 1208 has no language limiting it to only certain types of false statements, i.e., statements other than those relating to prior injuries.

Resweber v. Haroil, 660 So.2d at 12.
The claim itself is not contingent upon whether a potential claimant falls within the ambit of the workers' compensation act (is injured by an accident during the course and scope of his employment), or is based on the merits of the claim before the hearing officer, (sic) is strictly concerned with any misrepresentation made by a claimant.
Thus, it appears that when an employee violates La.R.S. 23:1208, his actions are tortious in nature (the conduct may even be considered criminal in nature), rather than a workers' compensation matter. At best, the conduct prohibited by La.R.S. 23:1208 presents a cause of action in tort for fraud or deceit.
In Devore v. Hobart Mfg. Co., 367 So.2d 836 (La.1979), our Supreme Court recognized that La.C.C. Art. 2315 affords a broad ambit of protection for persons damaged by intentional and negligent acts of others. Further, Louisiana courts have long recognized that a party who is injured by the fraud and deceit of another has a cause of action against the offending party for damages. Swann v. Magouirk, 157 So.2d 749 (La. App. 2nd Cir.1963); White v. Lamar Realty, Inc., 303 So.2d 598 (La.App. 2nd Cir.1974). In Altex Ready-Mixed Concrete Corp. v. The Employers Commercial Union Insurance Company et al., 308 So.2d 889 (La.App. 1st Cir.1975), writ refused, 312 So.2d 872 (La.1975), the court stated the following:
"Fraud exists if it can be shown that material misrepresentations have been made by one party designed to deceive another, ... to cause loss or inconvenience to the other."

Deville v. Leonards, 457 So.2d 311, 313 (La.App. 3 Cir.1984). See also Cagle v. Loyd, 617 So.2d 592 (La.App. 3 Cir.1993).
In Coleman v. Sheraton Pierremont, 25,452 (La.App. 2 Cir. 1/19/94); 631 So.2d 50, 53, citing Sampson v. Wendy's Management, Inc. 593 So.2d 336 (La. 1992), the supreme court noted "that a retaliatory discharge cause of action found in the chapter on worker's compensation *84 was not a worker's compensation matter to be heard by administrative hearing officers, since the cause of action was in tort and/or a claim for civil penalties." Following the reasoning in Sampson, we find that the penalties meted out by the hearing officer in accordance with La.R.S. 23:1208 against claimant clearly were not "directly associated with the employee's work-related injury," Sampson, 593 So.2d at 339. Instead, the nature of the cause of action embodied in La.R.S. 23:1208 is tortious/delictual in nature, falling beyond the jurisdictional authority of the hearing officer as authorized by La. Const. Art V, § 10(A)(B), § 16(A), La.R.S. 23:1310.3. Clearly, the misconduct characterized by La.R.S. 23:1208 falls within a well recognized area of tort law (the tort of fraud/deceit), and thus we conclude that the hearing officer and the Office of Workers' Compensation lacked jurisdiction to impose sanctions under La.R.S. 23:1208.
Id., at 76-78. (Footnotes omitted.)
I feel that the WCJ in the matter sub judice had no subject matter jurisdiction to determine whether this plaintiff committed a fraud, civil or criminal. But I would do more than find simply a lack of subject matter jurisdiction, as we did in Grant, 696 So.2d at 76, to reach the more fundamental problem with an administrative officer using the La.R.S. 23:1208 to adjudge this matter.
First, a consideration of La.R.S. 23:1208 in depth is appropriate. In Grant, we failed to discuss Subsection (C) of La.R.S. 23:1208, which provides the penalties for making a false statement or representation under Subsection (A). Subsection (C) provides:
(1) Whoever violates any provision of this Section, when the benefits claimed or payments obtained have a value of ten thousand dollars or more, shall be imprisoned, with or without hard labor, for not more than ten years, or fined not more than ten thousand dollars, or both.
(2) Whoever violates any provision of this Section, when the benefits claimed or payments obtained have a value of two thousand five hundred dollars or more, but less than a value of ten thousand dollars shall be imprisoned, with or without hard labor, for not more than five years, or fined not more than five thousand dollars, or both.
(3) Whoever violates any provision of this Section, when the benefits claimed or payments obtained have a value of less than two thousand five hundred dollars, shall be imprisoned for not more than six months or fined not more than five hundred dollars, or both.
(4) Notwithstanding any provision of law to the contrary which defines "benefits claimed or payments obtained," for purposes of Subsection C of this Section, the definition of "benefits claimed or payments obtained" shall include the cost or value of indemnity benefits, and the cost or value of health care, medical case management, vocational rehabilitation, transportation expense, and the reasonable costs of investigation and litigation.
The supreme court most recently discussed the penal nature of La.R.S. 23:1208 in Resweber. Discussing the history of La.R.S. 23:1208, the court provided:
The history of Section 1208 indicates a clear legislative intent to prevent and discourage fraud in relation to workers' compensation claims, and Section 1208 should not be subjected to a strained interpretation which would undercut that legislative intent. Prior to 1989, Section 1208 required a criminal conviction under its provisions before the employee forfeited his benefits. However, the legislature eliminated the necessity of a criminal conviction as a prerequisite for a claimant's forfeiture of benefits by amending Section 1208 to require only a "violation" of the Section. 1989 La. Acts No. 454. Thus, the legislature chose to make it easier to establish grounds for a *85 claimant's forfeiture of benefits. H. Alston Johnson, Workers' Compensation, Developments in the Law, 50 La.L.Rev. 391, 401 (1989). A 1992 amendment to Section 1208 added civil penalties to the criminal penalties and made clear that a hearing officer is to determine whether a claimant violated the section, resulting in the disqualification from receiving benefits. (FN 4). 1992 La. Acts No. 763. See generally, Denis Paul Juge, Louisiana Workers' Compensation § 6:3 (1995). The legislature has determined workers' compensation fraud is a severe and growing problem and has continually amended Section 1208 to make it easier to enforce and to make the penalties stiffer. It is clear from the history of the statute that the legislature intended that any false statements or representations willfully made for the purpose of obtaining benefits would result in forfeiture of those benefits, and this legislative intent cannot be ignored.
Id., at 12-13.
Footnote four cited in the above excerpt of Resweber explains:
Subsequent to the alleged misrepresentations in the present cases, the legislature again amended Section 1208 to provide more severe criminal penalties ranging from six months imprisonment where the value of benefits is less than two thousand dollars, and up to ten years, where the value equals or exceeds ten thousand dollars. The amendment also increased the civil penalties to not less than five hundred dollars nor more than five thousand dollars. 1993 La. Acts No. 829.
Id., at 17.
While I agree that La.R.S. 23:1208 clearly has the goal of discouraging the use of fraud to manipulate the workers' compensation system, the penalizing method of that discouragement belies a most fundamental problem with the statute which has thus far remained ignored. La.R.S. 23:1208 is unconstitutional in that it violates the procedural due process guarantee of the U.S. Const. Amends. V, XIV and La. Const. art. I § 2 (1974). Indeed, courts of appeal have been historically reluctant to raise constitutional issues on their own motions. However, Georgia Gulf v. Board of Ethics for Public Employees, 96-1907 (La.5/9/97); 694 So.2d 173, clearly recognizes the constitutional right of a court of appeal to raise and decide constitutional issues on its own motion. The Georgia case provides the following discussion:
From the outset, the Ethics Commission asserts that the due process issues were not raised in the administrative proceedings, were not assigned as error on the appellate level, and are not properly before us. We disagree.
. . .
Moreover, La.Code Civ.P. art. 2164 provides that an appellate court "shall render any judgment which is just, legal, and proper upon the record on appeal." As noted in the Official Revision Comments under Art. 2164, the appellate court has "complete freedom to do justice on the record irrespective of whether a particular legal point or theory was made, argued, or passed on by the court below." In a similar vein, Uniform Rules of Louisiana Court of Appeal, Rule 1-3 provides that even in the absence of an assignment of errors, the appellate court can review such issues if the "interest of justice clearly requires...."
Under the codal authorities cited herein above, it is clear that the appellate court had the right to. consider the issue of due process even though there was no assignment of error in that regard. Accordingly, we find that the due process issue is also properly before us.
Id., at 175-76. (Emphasis added.)
In considering its constitutionality, a review of the evolution of the statute is helpful. Acts 1914, No. 20, § 37(1) was the original enactment setting forth the *86 foundation for the modern La.R.S. 23:1208. The earlier section read:
If for the purpose of obtaining or defeating any benefit or payment under the provisions of this act, either for himself or any other person, any person willfully makes a false statement or representation, he shall be guilty of a misdemeanor and upon conviction thereof shall be fined not exceeding five hundred dollars or imprisoned not exceeding twelve months, or both, in the discretion of the Court; and an employee from and after such conviction shall cease to receive any compensation under this act.
The statute remained substantially unchanged until 1989 when the "guilty of a misdemeanor ... conviction" language was removed and the last sentence was changed to read: "Any employee violating this Section shall in addition forfeit any right to compensation benefits under this Chapter." Acts 1989, No. 454, § 5. Significant, however, is that the language indicating that a fraudulent person shall be subject to not more than a five hundred dollar fine or not more than twelve months in prison remained unchanged. Similarly, in 1992, the statute was re-structured and the possibilities for civil penalties were added, but the penal provision remained the same. In the years following, further amendments were made to the statute not pertinent to this discussion.
Interestingly enough, the supreme court in Resweber, 660 So.2d 7, acknowledged that the legislature removed "the necessity of a criminal conviction as a prerequisite for a claimant's forfeiture," which it once required, but the Resweber court failed to pause at the result of removing the conviction requirement while keeping the felony and misdemeanor penalty sections. Id., at 12. On the contrary, the supreme court embraced the ease of punishing without conviction. Indeed, it certainly is easier to convict a claimant in a civil proceeding. However, it is painfully clear that such a convenience can only run far askance of constitutional objectives.
In its discussion, the Resweber court cited a law review article to support the legislatures intent of making La.R.S. 23:1208 easy "to enforce and to make the penalties stiffer." Id. Yet, a look at the article reveals an unpersuasive one-liner which states: "The sanction for misrepresentations concerning benefit payments is changed, probably to make it easier to prove." H. Alston Johnson, Workers' Compensation, Developments in the Law, 50 La.L.Rev. 391, 401 (1989). In his article, Mr. Johnson footnotes the language change of La.R.S. 23:1208 which requires a violation not a conviction.
While I do not mean to cast doubt on the legislature's intent to make fraud easy to prove; nevertheless, the short-sightedness of the change from "conviction" to a mere violation is simply constitutionally unacceptable.
Clearly, it is the very criminality of the statute that places it in peril. In Grant, 696 So.2d 73, we discussed fraud as a civil tort matter. But a civil tortfeasor does not risk imprisonment, so it is now appropriate to consider when fraud becomes a criminal matter. A sanction is penal when it is "punishable; inflicting a punishment; containing a penalty, or relating to a penalty." BLACK'S LAW DICTIONARY 1132 (6th ed.1990). A crime is any conduct so defined by the Criminal Code, by other acts of the legislature, or by the Louisiana Constitution. La.R.S. 14:7. A felony is "any crime for which an offender may be sentenced to death or imprisonment at hard labor," while a misdemeanor is any crime other than a felony. La.R.S. 14:2(4) and (6). The Code of Criminal Procedure adds to the definition of misdemeanor by noting that a misdemeanor "includes the violation of an ordinance providing a penal sanction." La.Code Crim.P. art. 933.
La.R.S. 23:1208 unquestionably provides for severe criminal sanctions, particularly where in Subsection (C)(1) and (C)(2) an offender may be subject to, by definition, felonious imprisonment at hard labor for *87 up to ten or five years, respectively. The penal nature of the statute, placed in the workers' compensation scheme to be used at the behest of a hearing officer, is the essence of the glaring disjunct between the procedural means and substantive ends of La.R.S. 23:1208 and the constitutional concerns invoked by criminal proceedings.
The fundamental concerns that arise in a criminal setting are absent in civil matters, hence the need for the added procedural devices to safeguard constitutional rights of the accused.
In a criminal case, unlike in a civil setting, procedural protections sufficient to afford due process are provided through the criminal procedural rules. The defendant's privacy interests are protected from erroneous deprivation by adequate criminal procedural safeguards such as the grand jury indictment, the right to seek a preliminary examination, his ability to move for a bill of particulars and discovery, and the contradictory hearings on motions such as was had in the present case.
State v. Pierre, 606 So.2d 816, 820 (La. App. 3 Cir.), writ denied, 607 So.2d 568 (La.1992).
La. Const. art. I, § 13 provides the following protections:
When any person has been arrested or detained in connection with the investigation or commission of any offense, he shall be advised fully of the reason for his arrest or detention, his right to remain silent, his right against self incrimination, his right to the assistance of counsel and, if indigent, his right to court appointed counsel. In a criminal prosecution, an accused shall be informed of the nature and cause of the accusation against him. At each stage of the proceedings, every person is entitled to assistance of counsel of his choice, or appointed by the court if he is indigent and charged with an offense punishable by imprisonment. The legislature shall provide for a uniform system for securing and compensating qualified counsel for indigents.
La. Const. art. I, § 14 provides that the "right to a preliminary examination shall not be denied in felony cases except when the accused is indicted by a grand jury." Section 15 of our constitution provides for how criminal proceedings may be initiated and guarantees that no person shall be subject to double jeopardy. Further, Section 16 of Article I sets forth the provisions for the right to a fair trial in a criminal proceeding while Section 17 ensures the criminally accused the right to a jury trial.
These Sections of Louisiana's Constitutional Declaration of Rights have no counterpart in civil proceedingslogically so; the possibility of loss of personal liberty is not at stake. Further, as a natural consequence of the kinds of penalties criminal statutes impose, we must not fail to mention the sharp distinction between the burden of proof in a civil matter and that of a criminal matter. In ordinary civil actions, a plaintiff must prove each element of his case by a mere preponderance of the evidence. Lasha v. Olin Corp., 625 So.2d 1002 (La.1993). In criminal matters, all of the evidence must satisfy a rational juror that the defendant is guilty beyond a reasonable doubta higher burden of proof. State v. Meshell, 567 So.2d 1181 (La.App. 3 Cir.1990).
In sum, with La.R.S. 23:1208 as applied in the present matter, Defendant enjoys none of the procedural safeguards of a criminal proceeding; nevertheless, he is subject to the sanctions of a penal statute. La.R.S. 23:1208 applied as it is broadly written, in disregard of constitutional due process, is nothing more than a criminal statute masquerading in civil garb, designed to discourage fraud in workers' compensation matters with over-broad penalization.
I make one further observation. Even if La.R.S. 23:1208 would not be violative of a beneficiary's procedural due process rights, it would violate his substantive due process rights. Even had the face of de minimis fraud reared its ugly head in a case involving extreme physical injuries *88 such as we are here faced with, the question arises of excessive and disproportionate punishment. La.Code Crim.P. art. 894.1 and U.S. Const. Amend. VIII. State v. Crowder, 31,331, p. 2 (La.App. 2 Cir. 9/23/98); 718 So.2d 1061, 1063, explains:
A sentence is constitutionally excessive if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v.. Dorthey, 623 So.2d 1276 (La.1993); State v. Caraway, 28,769 (La.App.2d Cir.10/30/96), 682 So.2d 856. A sentence is considered grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks the sense of justice. State v. Caraway, supra.

The harm Plaintiff suffered by Defendant's false deposition testimony, which alone does not rise to the kind of fraudulent behavior contemplated by the statute, is so grossly out of proportion to the harm suffered by Defendant if he were to have all compensation benefits removed, leaving him maimed and without rehabilitation, that it readily and harshly shocks this reviewer's sense of justice.
For these reasons, I concur in the majority opinion.
NOTES
[1] La.R.S. 23:1201.2 provides, in pertinent part:

Any employer or insurer who at any time discontinues payment of claims due and arising under this Chapter, when such discontinuance is found to be arbitrary, capricious, or without probable cause, shall be subject to the payment of all reasonable attorney fees for the prosecution and collection of such claims.