STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

12-548 consolidated with 12-549

RONALD DUNN, JR.

VERSUS

LAKEWOOD QUARTERS RETIREMENT COMMUNITY

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION - DISTRICT 02
PARISH OF RAPIDES, NO. 09-01540 C/W 10-03120
JAMES L. BRADDOCK, WORKERS' COMPENSATION JUDGE

\*\*\*\*\*\*\*\*\*\*

SHANNON J. GREMILLION
JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Jimmie C. Peters, James T. Genovese, and Shannon J. Gremillion, Judges.

AFFIRMED AND RENDERED.

Philip J. Borne
Scott R. Samuel
Christovich & Kearney, LLP
601 Poydras Street, Suite 2300
New Orleans, LA 70130-6078
(504) 561-5700
COUNSEL FOR DEFENDANTS/APPELLANTS:
    Lakewood Quarters Assisted 8585 Tenant, L.L.C.
    SUA Insurance Company

**Robert L. Beck, III**
**Law Office of Robert L. Beck, Jr., LLC**
**P. O. Drawer 12850**
**Alexandria, LA 71315-2850**
**(318) 445-6581**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
    **Ronald Dunn, Jr.**

**GREMILLION, Judge.**

In this workers' compensation matter, the employer and its insurer appeal an adverse judgment condemning them to pay temporary total disability benefits, penalties in the amount of $16,000.00, and attorney fees of $15,000.00.[1] Except to render judgment in favor of the employee, increasing the attorney fee award to reflect the work done in defending the judgment, we affirm.

## FACTS

Ronald Dunn, Jr., was hired on October 8, 2008, to serve Lakewood Quarters Assisted, 8585 Tenant, LLC, in Baton Rouge, Louisiana, as maintenance supervisor. Late that same day, Dunn was helping other maintenance workers re-erect a very heavy sign that had been blown down in a storm. He claims that he attempted to pick his corner up before anyone else and felt intense pain in his lower abdomen. However, the pain subsided a short time thereafter, and Dunn testified that he felt that he had simply pulled a muscle. Dunn failed to report this incident to anyone at Lakewood. Indeed, the following day Dunn completed a Second Injury Fund Questionnaire in which he denied ever having a disability or other condition that limited him, as well as denying ever having had an on-the-job accident.

By the next day, Dunn had developed a knot in his right groin. He also had experienced symptoms of a sexually transmitted disease (STD). Therefore, he attempted to schedule a doctor's appointment. The only physician with whom Dunn could arrange an appointment on short notice was Dr. Claude W. Gilbreath of Pontchatoula, Louisiana. Dr. Gilbreath saw Dunn on October 10, 2008. Dunn completed a patient intake form and was specifically asked whether his injury was

---

[1] Dunn had filed two separate "Disputed Claim for Compensation" forms with the Office of Workers' Compensation. Both claims arose from the October 8, 2008, incident. The claims were consolidated for trial purposes. Even though this court has assigned two appeal docket numbers, this opinion will address all issues raised.

work-related, to which Dunn replied in the negative. Dunn explained this by virtue of the fact that by the time of the appointment, he was more concerned about the STD symptoms. Dr. Gilbreath examined Dunn and diagnosed him with an inguinal hernia. Dunn's visit to Dr. Gilbreath was facilitated by Lakewood, whose Executive Director, Ms. Terry Atchetee, was told by Dunn that he had a doctor's appointment but not that the visit was prompted in part by an on-the-job accident.

The fact that he had been injured at work was not communicated by Dunn to Lakewood until Monday, October 13. Dunn was referred to Concentra Medical Centers (LA) in Baton Rouge. On October 14, 2008, Dr. Katharine Rathburn at Concentra confirmed the diagnosis of right inguinal hernia, referred Dunn to a surgeon, and returned him to work with restrictions of no lifting, pushing, or pulling over thirty pounds.

On October 22, 2008, Dunn reported to the emergency room at Ochsner Medical Center West Bank in Gretna, Louisiana, complaining of increased abdominal pain, nausea, and difficulty urinating. The attending physician examined Dunn and noted that he, in fact, had bilateral inguinal hernias. Dunn was prescribed Ultram and told to follow up with his primary doctor.

Dunn next saw Dr. William S. Richardson, a surgeon affiliated with Ochsner Medical Center in New Orleans, on October 30, 2008. Dunn related a history to Dr. Richardson that was consistent with that given Dr. Rathburn and to the personnel at Ochsner West Bank. Dr. Richardson also noted bilateral hernias. According to Dunn, he was scheduled to undergo surgery, but his procedure was canceled.

For reasons not apparent in the record, Dunn relocated from Independence, Louisiana, to Alexandria, Louisiana, sometime between October 30 and December 8, 2008, when Dunn first saw Dr. Gerald J. Leglue, Jr., an Alexandria physical

2

medicine specialist.  The history given by Dunn to Dr. Leglue was consistent with the previous histories.  Dr. Leglue sought approval from SUA, Lakewood's workers' compensation insurer, to refer Dunn to Dr. David M. Remedios, an Alexandria surgeon.  He also recommended that Dunn undertake physical therapy.

On December 18, 2008, Dr. Remedios performed a hernia repair procedure on Dunn's right-sided hernia.  Dr. Remedios placed Dunn on lifting restrictions for six weeks, with instructions that after six weeks he could lift over twenty pounds with caution and was to immediately stop if he felt any pain.  That six-week restriction proved academic, as Dr. Remedios performed a hernia repair procedure on the left side on January 8, 2009.

The results of the left-side surgery were less than Dunn expected.  He testified that following the January surgery he experienced more intense pain than the hernia had caused.  Lakewood referred Dunn to Dr. J. Michael McGinty, an Alexandria surgeon, for an evaluation of these complaints.  Dr. McGinty opined that Dunn's pain was secondary to the hernia repair surgery.  However, he also opined that because the pain was not associated with activity, there was no need to restrict Dunn's activities.

Dr. Remedios attempted several times to refer Dunn to neurophysiologists and other specialists before finally sending him to Dr. Charles Ugokwe, an Alexandria neurologist.  Dr. Ugokwe prescribed Lyrica, a medication used to treat neuropathic pain.  Unfortunately, Dunn proved allergic to Lyrica, and its use was halted.

On September 14, 2009, Dr. Remedios injected a mixture of an anesthetic and a steroid directly into the area of Dunn's left groin that was in pain.  Dunn experienced an 80% to 90% relief from his pain following that injection.  Dr. Remedios then referred Dunn to a pain management specialist, Dr. Melanie Firmin,

3

of Alexandria. Dr. Firmin diagnosed Dunn with left iliolinguinal neuralgia and started him on Cymbalta.

In February 2010, Lakewood terminated Dunn's weekly indemnity benefits. Dunn had initially filed a disputed claim for compensation with the Office of Workers' Compensation in February 2009, because Lakewood had refused to authorize a CT scan Dr. Remedios had ordered. He amended his complaint to add his demand for reinstatement of his weekly indemnity benefits and to recover several medical bills Lakewood failed to pay. He also sought penalties and attorney fees.

Dunn's claim was heard by the workers' compensation judge (WCJ) on October 11, 2011. By reasons orally delivered on December 5, 2011, the WCJ found that Dunn proved by clear and convincing evidence that he sustained bilateral inguinal hernias in an October 8, 2008, accident. The WCJ also found that Dunn was temporarily and totally disabled as a result of the hernias, entitling him to weekly indemnity benefits of $453.33. Lakewood was ordered to provide reasonable medical treatment with Drs. Ugokwe and Firmin and to pay medical bills incurred by Dunn on February 1, 2009 and March 5, 2009, at Christus St. Francis Cabrini Hospital. Dunn was awarded a $2,000.00 penalty for Lakewood's failure to pay the February 1, 2009 bill; a $2,000.00 penalty for failing to pay the March 5 bill; a $2,000.00 penalty for failing to authorize treatment with Dr. Ugokwe; a $2,000.00 penalty for failing to authorize treatment with Dr. Firmin; an $8,000.00 penalty for arbitrary and capricious termination of Dunn's weekly indemnity benefits; and $15,000.00 in attorney fees. The judgment awarding these items was signed on February 2, 2012. Lakewood then appealed. Dunn answered the appeal and has requested additional attorney fees for his counsel's work on appeal.

4

## ASSIGNMENTS OF ERROR

Lakewood asserts that the WCJ erred in the following respects:

1) In finding that Dunn proved the occurrence of an unwitnessed accident on October 8, 2008;

2) In finding that Dunn was entitled to $16,000.00 in penalties and $15,000.00 [in attorney fees] when Dunn failed to prove the occurrence of an unwitnessed work related accident allegedly occurring on October 8, 2008; and,

3) In failing to find that Dunn violated La.R.S. 23:1208.

## ANALYSIS

Lakewood's first two assignments of error both address whether Dunn satisfied his burden of proving that he was involved in a work-related accident on October 8, 2008. The Louisiana Supreme Court formulated the burden of proof and the standard of review used by appellate courts in workers' compensation cases involving unwitnessed accidents in *Bruno v. Harbert International Inc.*, 593 So.2d 357 (La.1992). Unless circumstances cast doubt or suspicion on the reliability of an employee's testimony, the WCJ should accept it as true. Thus, the worker's testimony alone may sufficiently discharge this burden of proof, provided two elements are satisfied: "(1) no other evidence discredits or casts serious doubt upon the worker's version of the incident; and (2) the worker's testimony is corroborated by the circumstances following the alleged incident." *Id*. at 361. The WCJ's determination of whether the worker has satisfied his burden of proof is subject to review under the manifest-error standard. *Id.*

On Dr. Gilbreath's history questionnaire, Dunn denied that his complaints were the result of a work-related incident. Dunn also failed to disclose to Lakewood that he had been injured on the job until five days after it happened. Lakewood pins its argument that Dunn failed to carry his burden of proof on these two facts.

5

However, Dr. Remedios was questioned about the origin of the hernia. When shown Dr. Gilbreath's records, Dr. Remedios agreed that nothing in them suggested that the hernia was related to Dunn's work. However, Dr. Remedios also testified that Dunn's hernias were small and had no scar tissue surrounding them, which suggested that they were recently formed. There is no question that Dunn had bilateral hernias; Lakewood questions the causal relationship between Dunn's hernais and the lifting of the sign on October 8. But, other than the two facts cited above, it points to no other evidence that would cast doubt on Dunn's account. And Dunn explained that he merely felt he had pulled a muscle until he developed a knot in his abdomen; by then, Dunn had a bigger problem because he was experiencing symptoms of an STD. Thus, he testified, he did not disclose the on-the-job nature of his complaints.

The WCJ obviously accepted Dunn's version of the events. This credibility determination can only be overturned when the witness's story is so internally inconsistent or when it is contradicted by documents of other objective evidence to such an extent that no reasonable finder of fact could find the testimony credible. *Id*, citing *Rosell v. Esco*, 549 So.2d 840 (La.1989). We cannot say that the medical records cast doubt on Dunn's account. And they certainly do not so contradict Dunn's version to the extent that no reasonable fact finder could credit Dunn's account.

Lakewood's first two assignments of error are without merit.

Louisiana Revised Statute 23:1208 criminalizes the willful making of false statements or representations for the purpose of obtaining or defeating any workers' compensation benefit or payment. In addition to criminal penalties, Section 1208 imposes the possible assessment by the WCJ of civil penalties and mandates forfeiture of the right to workers' compensation benefits. *See* La.R.S.

6

23:1208(D) & (E). The supreme court has held that Section 1208 requires only three elements: (1) the claimant made a false statement, (2) the false statement was willfully made, and (3) the statement was made for the purpose of obtaining workers' compensation benefits. *Resweber v. Haroil Const. Co.*, 94-2708, 94-3138 (La. 9/5/95), 660 So.2d 7.

The following are the false statements or misrepresentations Lakewood asserts lead to the conclusion that Dunn violated Section 1208: (1) fabricating the unwitnessed accident of October 8, 2008; (2) telling Drs. Leglue, Remedios, and Ugokwe that following the October 8 incident, he experienced immediate, intense, bilateral groin pain that affected his posture and/or gait; (3) testifying at trial that his penile discharge began on Thursday, October 9, when Dr. Gilbreath's records indicate that it had been present for at least three days; and, (4) testifying that he made the appointment with Dr. Gilbreath for a work-related injury when Dr. Gilbreath's records reflect that his injury was not work-related.

As with the issues presented in Lakewood's first two assignments of error, the standard of review of a WCJ's findings with regard to Section 1208 is whether the WCJ's findings are manifestly erroneous. *Boise Cascade Corp. v. Dean*, 99-1356 (La.App. 3 Cir. 5/3/00), 767 So.2d 76, *writ denied*, 00-2505 (La. 11/13/00), 774 So.2d 146. This standard of review requires that we review the entire record, not to determine whether the WCJ was correct, but to determine whether there is no reasonable support for his conclusion, and the finding is clearly wrong or manifestly erroneous. *Stobart v. State through Dep't of Transp. and Dev.*, 617 So.2d 880 (La.1993). Again, we are faced with an issue that largely hinges on the credibility of Dunn.

We find more than reasonable support in the record for the WCJ's findings. There is simply no question that Dunn had bilateral inguinal hernias. One was

diagnosed on October 10, 2008, and the other on October 22, 2008. The fact that Dr. Gilbreath's records do not reflect that Dunn told him that his problem was work-related does not strike this court as a false statement made for the purpose of obtaining benefits; on the contrary, it would seem to represent a statement that would tend to lessen the probability that he would receive workers' compensation benefits. With regard to the statements made to Drs. Leglue, Remedios, and Ugokwe that he experienced bilateral groin pain following the accident, the WCJ found that these statements were "inconsequential" to obtaining benefits, and we agree. The fact that Dunn, well after the initial incident, told doctors that he suffered bilateral pain, as opposed to pain on the right side only, is an understandable condensation of the facts. Objectively, Dunn had bilateral hernias. We cannot overturn the WCJ's findings of fact on this credibility determination. The third assignment of error has no merit.

Dunn answered Lakewood's appeal and requests that we award him additional attorney fees. An employee who successfully defends a workers' compensation judgment on appeal is entitled to additional attorney fees. *Phillips v. Diocese of Lafayette*, 03-1241 (La.App. 3 Cir. 3/24/04), 869 So.2d 313. In the present matter, we find that Dunn is entitled to additional attorney fees, and award him $4,000.00 for his counsel's work on appeal.

All costs of this appeal are taxed to defendants/appellants, Lakewood Quarters Assisted 8585 Tenant, LLC, and SUA Insurance Company.

**AFFIRMED AND RENDERED.**

8